# EX PARTE TERRY.

### ORIGINAL.

No. 6. Original. Submitted, October 18. 1888. — Decided November 12, 1888.

This court is not required to exercise the power conferred upon it by Rev. Stat. §§ 751–753, to inquire upon writ of *habeas corpus* into the cause of the restraint of the liberty of any person who is in jail under or by color of the authority of the United States, or who is in custody in violation of the Constitution of the United States, if it appears, upon the petitioner's own showing, that, if brought into court, and the cause of his commitment inquired into, he would be remanded to prison.

The power of Circuit Courts of the United States to punish contempts of their authority is incidental to their general power to exercise judicial functions, and the cases in which it may be employed are defined by acts of Congress.

An order committing for contempt is a nullity if the court making it was without jurisdiction of the person of the offender, and he can be discharged upon writ of *habeas corpus*, though such writ cannot be used to correct mere errors and irregularities however flagrant.

Upon original application to this court for a writ of *habeas corpus* on behalf of a person committed by order of a Circuit Court of the United States for contempt committed in its presence, the facts recited in such order as constituting the contempt must be taken as true, and would be so taken upon a return to the writ if one were awarded.

A Circuit Court of the United States, upon the commission of a contempt in its presence, may, upon its own knowledge of the facts, without further proof, without issue or trial, (and without hearing an explanation of the motives of the offender,) immediately proceed to determine whether the facts justify punishment, and to inflict such punishment therefor as the law allows.

The jurisdiction of a Circuit Court to immediately inflict punishment for a contempt committed in its presence is not defeated by the voluntary retirement of the offender from the court-room to a neighboring room in the same building after committing the offence; but it is within the discretion of the court either to at once make an order of commitment, founded on its own knowledge of the facts, or to postpone action until the offender can be arrested on process, brought back into its presence, and given an opportunity to make formal defence against the charge of contempt; and any abuse of that discretion is at most an irregularity or error, not affecting the jurisdiction of the court.

The facts in this case, as detailed in the papers before the court, and as they must be regarded in this collateral proceeding, show nothing in conflict with the fundamental principles of Magna Charta; nor do they show that the alleged offence was committed at a time preceding and separated from the commencement of the prosecution, bu , on the contrary, the commission of the contempt, the retirement of the offender from the court-room to the marshal's office in the same building, and the making of the order of commitment all took place substantially on the same occasion, and constituted, in legal effect, one continuous, complete transaction, occurring on the same day, and at the same session of the court.

THIS was an application for leave to file a petition for a writ of *habeas corpus*. The petitioner alleged that he was unlawfully undergoing a term of imprisonment in California, under a judgment rendered by the Circuit Court of the United States for the Northern District of that State, adjudging that he had been guilty of contempt in the presence of the court, and ordering him to be punished therefor by imprisonment in the county jail of the county of Alameda in that State until the further order of the court, but not to exceed the term of six

months. This order, which recited the facts constituting the contempt, is set forth at length in the application for leave to file the petition, and will be found, together with the petition, in the opinion of the court, *post*, 297. Reference is made to both the petition and the order there, for a further understanding of the case.

*Mr. Samuel Shellabarger* and *Mr. J. M. Wilson* in support of the petition filed a brief, making the following points:

I. It appears by the copy of the proceedings and order of the court that it does not anywhere disclose that the said Terry was in court at the time when the order for his imprisonment was made, or that he had any notice whatever that such proceedings for contempt would be instituted, or had been instituted, nor that he had any opportunity, whatever, to be heard regarding his said conviction. It will also be seen that the said Terry, in his application, makes oath that: "Said order was made by said court in the *absence* of your petitioner, and *without* his having *any notice* of the intention of the said court to take any proceedings whatever in relation to the matters referred to in the said order, and without giving your petitioner any *opportunity whatever of being heard* in defence of the charge therein against him."

The fact disclosed by the record being, therefore, such that there is no indication in the record that the accused was present in court either when the proceedings against him were commenced, or when they were proceeded with, or when he was adjudged guilty, therefore the presumption, in a criminal case like this, is that there was no such notice or opportunity for defence, because the jurisdiction of that court, for the purpose of rendering the judgment, must, in every case, be affirmatively disclosed by the record, otherwise the reviewing court will *presume* want of jurisdiction. *Grace* v. *Insurance Co.*, 109 U. S. 278, 283; *Turner* v. *Bank of North America*, 4 Dall. 8; *Ex parte Smith*, 94 U. S. 455; *Robertson* v. *Cease*, 97 U. S. 646; *Börs* v. *Preston*, 111 U. S. 252, 255.

II. It is no answer to this to say that the record shows that

the offence was committed in the presence of the court. The criminal proceeding for contempt is, under our law, strictly and technically an independent action or proceeding. True, this proceeding is summary in its nature, yet it is none the less on that account an independent or distinct proceeding, regulated by its own rules and principles, and is highly penal, and, consequently, strictly and jealously guarded by the courts. *New Orleans* v. *Steamship Co.*, 20 Wall. 387, 392, citing *Ex parte Kearney*, 7 Wheat. 38; *Hayes* v. *Fischer*, 102 U. S. 121. *In re Childs*, 22 Wall. 157; *Stimpson* v *Putnam*, 41 Vermont, 248; *Worden* v. *Searls*, 121 U. S. 14.

It is impossible to question the proposition that the judgment in the present case was one wholly independent of the case on trial when the alleged contempt was committed, and strictly criminal in its nature, and, therefore, one where no presumptions will be made that the court had jurisdiction to inflict the punishment, *because the court may have had jurisdiction in the case on trial when the alleged contempt was committed.* Hence, the *jurisdiction* of the court, in this wholly independent criminal prosecution for contempt, must be disclosed by the record, and will not be presumed from the fact that the court may have had jurisdiction of the case on trial when the contempt occurred.

The averment of the relator is that when the proceedings in contempt were begun, continued and ended, he was *absent from the court* — had no intimation of the existence of such proceedings or that they would be instituted, and had no opportunity to be heard. Here, then, is a "suggestion" — an averment of a *fact* — not of a fact going to the merits of the accusation of contempt — not one of those things which can be examined only on writ of error or appeal — but of a fact going directly to the *power of the court* to either consider the merits or render the judgment of imprisonment. That such fact of the service required to give jurisdiction is one always open to proof in attacking a judgment, see *Biddle* v. *Wilkins*, 1 Pet. 686. This is incontestably so, *provided* notice and opportunity to be heard *before judgment* is requisite to give the court jurisdiction in such cases. Now nothing is bet-

ter settled than that a suggestion, in the application for the writ of *habeas corpus* in cases of this character, setting up facts going to the defeat of the jurisdiction, will be examined into by this court on *habeas corpus*. *Ex parte Fisk*, 113 U. S. 713.

III. Before conviction in a criminal prosecution for contempt, there must be an opportunity to be heard — something that amounts to notice that the party is accused, and opportunity to make defence. We do not deny that it was within the power of the court *instantly*, upon the commission, in its presence, of the alleged contempt, and the offender continuing to be present, to adjudge the offending party guilty of contempt, and to order imprisonment.

But here the record discloses, not only that the petitioner was *not instantly proceeded against*, but that he was allowed to depart from the court, and was not again brought before it in such a way as to compel him to take notice of all orders and steps in the totally separate and distinct proceedings in the contempt case.

We are therefore brought to the naked question whether, in the federal courts, of limited jurisdiction, a record resulting in imprisoning a man for criminal contempt must not show in *some way independently of the averment that the contempt was committed in the face of the court*, that he had notice of the prosecution which resulted in his imprisonment? In answer to this question, we cannot do better than to refer to the language quoted by Cooley, in his Constitutional Limitations, page 403, 3d ed. [472] n. 2, where the rule on this subject is stated in these words: "Notice of some kind is the vital breath that animates judicial jurisdiction over the person. It is the primary element of the application of the judicatory power. It is of the essence of a cause. Without it there cannot be parties, and without parties there may be the form of a sentence, but no judgment obligating the person." See also *Bagg's Case*, 11 Rep. 99; *Cooper* v. *Board of Works*, 14 C. B. (N. S.) 180, 194; *Meade* v. *Deputy Marshal of Virginia*, 1 Brock. 324; *Goetcheus* v. *Matthewson*, 61 N. Y. 420. See also *Windsor* v. *McVeigh*, 93 U. S. 274; *MacVeigh* v. *United States*, 11 Wall. 259; *St. Clair* v. *Cox*, 106 U. S. 350; *Pana*

v. *Bowler*, 107 U. S. 529, 545; *Regina* v. *Dyer*, 1 Salk. 181; *S. C.* 6 Mod. 41; *Rex* v. *Benn and Church*, 6 T. R. 198; 1 Hawkins, Pleas of the Crown, 420; *Rex* v. *Venables*, 2 Ld. Raym. 1405.

IV. These cases establish the general proposition that even in cases where *summary convictions* are allowed, no condemnation is tolerated, by our law, without the accused being first furnished with notice that he is to be prosecuted, and with opportunity to know whereof he is accused, and to make reply.

Upon most familiar principle, this must be the law, even where the alleged contempt is committed in the face of the court, and where, therefore, no opening proof is required to establish, *primâ facie*, the fact of contempt.

V. We now turn to some authorities more directly in point on the particular facts of this case.

*In re Pollard*, L. R. 2 P. C., 106. This case was heard before Sir William Erle, Lord Justice Wood, Lord Justice Selwyn, Sir James William Colville and Sir Edward Vaughan Williams. The decision is accurately stated in the syllabus thus:

"A contempt of court, being a criminal offence, *no person can be punished for such unless the specific offence charged against him be distinctly stated and an opportunity given him of answering.*

"A barrister engaged in his professional duties before the Supreme Court at Hong Kong, was, without notice of the alleged contempt, or rule to show cause, and without being heard in defence, by an order of that court, fined and adjudged to have been guilty of several contempts of court in disrespectfully addressing the Chief Justice while conducting a cause. Such order, upon a reference by the Crown to the Judicial Committee under the statute 3 & 4 Will. 4 c. 41, § 4, set aside, and the fine ordered to be remitted, first, on the ground that the order was bad inasmuch as the offences charged were not of themselves such contempts of court as legally constitute an offence; *and secondly, that even if that had been so, no distinct charge of the several alleged offences was stated, and no opportunity given to the party accused of being heard, before passing sentence.*"

The case of *Capel* v. *Child*, 2 Cr. & Jer. 558, is in point. Although the statute 57 Geo. III. c. 99, § 50, under which the bishop, in that case, had nominated a curate, and thereby removed an incumbent, gave the bishop authority to act in that matter "*whenever it shall appear to the satisfaction of any bishop, either of his own knowledge or by proof by affidavit*, that the ecclesiastical duties of a benefice are inadequately performed, he may require the incumbent to nominate a fit person to assist;" yet it was held in that case that the removal of the incumbent was illegal and void for want of opportunity to be heard; and this, although the bishop's requisition contained the words "*whereas it appears to us of our own knowledge.*" The ground of this decision is sufficiently indicated by the following sentence from the opinion of Bailey, Baron: "There is a case of *The King* v. *Benn and Church*, 6 T. R. 198, in which, where a warrant of distress, which is in the nature of an execution, had issued, not grounded on a previous summons, Lord Kenyon laid it down *most distinctly as an invariable maxim of our law, that no man shall be punished before he has had an opportunity of being heard*," p. 579–580. We submit that this case is precisely in point. It is a case where the statute permitted the bishop to act *upon his own knowledge exclusively*. It is a case where the bishop certified that the facts upon which he acted *were within his own knowledge*, but in which he gave the incumbent an opportunity to be heard. In this it is in exact analogy with the case at bar, in that the court assumed to render judgment, because the facts, upon which the judgment was founded were, in part at least, *within the knowledge of the bishop;* but judgment was nevertheless rendered *without affording* the accused an opportunity to be heard.

The case of *King* v. *Cambridge University*, 8 Mod. 148, was one where, by mandamus, a member of the University was restored to his doctor's degree, from which he had been degraded by the University Court for speaking contemptuous words of the Vice-Chancellor and of the court. In this case the court, speaking of summary proceedings for contempt, say: "Now as to that matter, it is a constant rule in all cases

where a *mandamus* is granted that the party should have notice of his charge; but it does not appear by this return that *the Doctor* was summoned to answer for a contempt; so that he was sentenced without being heard, which is illegal and against natural justice, as may appear by the cases in the margin." The cases cited in the margin are: "9 Edw. 4, 14a; 39 Hen. 6, 32; 11 Co. 99a; Sid. 14. pl. 7; 2 Sid. 97; Style, 446, 452; Fortesc. Rep. 206, 325; Salk. 181. pl. 1; 2 Salk. 434, 435; Ld. Raym. 225; 2 Ld. Raym. 1343, 1405, 1407; 4 Mod. 33, 37; 6 Mod. 41; Ante, 3, 101; Post, 377; 12 Mod. 27; Stra. 567, 630, 678; Sess. Cas. 172; pl. 155, 219; pl. 179; 267; pl. 210, 295; pl. 252, 353; pl. 281. Fol. 416; Cas. of Set. and Rem. 373; 2 Barnard, K. B. 241, 264, 282."

In the case of *Foote*, 18 Pac. Rep. 678, the respondent had been adjudged guilty of contempt done in the presence of the court and fined $300, but this some fifty days *after the alleged contempt, and without notice to the contemnor.* The Supreme Court of California discharged the accused upon *habeas corpus* for the reason that the court, because of the delay, had lost jurisdiction to proceed as it might have done "at the time" of the alleged contempt. "Judgment cannot be given against any man in his absence for corporal punishment; he must be present when it is done." Lord Holt in *Rex* v. *Duke*, Holt, 399.

This rule has never been departed from in a single case either in England or in the United States. *Rex* v. *Harris*, Comb. 447; *The People* v. *Winchell*, 7 Cowen, 525; *The People* v. *Clark*, 1 Parker Cr. Cas. 360; *State* v. *Hughes*, 2 Alabama, 102; *S. C.* 36 Am. Dec. 411; *Hooker* v. *Commonwealth*, 13 Grattan, 763; *The People* v. *Kohler*, 5 California, 72; *Harris* v. *Duke*, Lofft, 400; *S. C.* Ld. Raym. 267; *Duke's Case*, 1 Salk. 400.

The record must show affirmatively that the defendant was then present. *Hamilton* v. *The Commonwealth*, 16 Penn. St. 129; *S. C.* 55 Am. Dec. 485; *Dunn* v. *The Commonwealth*, 6 Penn. St. 384; *State* v. *Matthews*, 20 Missouri, 55; *Scaggs* v. *Mississippi*, 8 Sm. & Marsh. 722; *Safford* v. *The People*, 1 Parker Cr. Cas. 474; *Kelly* v. *The State*, 3 Sm. & Marsh. 518; *Eliza* v. *The State*, 39 Alabama, 693; *Graham* v. *The State*, 40 Alabama, 659.

Contempt can only be visited summarily while the parties are yet in view of the court. *Stockham* v. *French*, 1 Bing. 365; *Ex parte Whitchurch*, 1 Atk. 55; *Hollingsworth* v. *Duane*, Wall. C. C. 77.

Whatever may be the view of the court regarding the *other* points now submitted, the relator must be discharged on the ground that this court can never give its august and supreme sanction to a rule of law or practice which, without affording to the citizen accused any manner of notice, or even hint, regarding the accusation against him, and with no sort of opportunity to be heard, proceeds, in his absence, to accuse, to try, to pronounce judgment and to order him to be imprisoned; this for an alleged offence committed at a time *preceding, and separated from, the commencement of his prosecution.*

It seems to us that to do this would be not only to disregard the fundamental principles contained in *Magna Charta*, in the Bills of Rights of all our States, and in the Federal Constitution, but would be, moreover, to inflict upon the very best, and the fundamental principles of our civilization an injury such as has never before been inflicted by the judgment of any court.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an original application to this court for a writ of *habeas corpus.* The petitioner, David S. Terry, alleges that he is unlawfully imprisoned, under an order of the Circuit Court of the United States for the Northern District of California, in the jail of Alameda County in that State.

That order is made a part of his application, and is as follows:

"*In the Circuit Court of the United States of America for the Northern District of California.*

"In the Matter of Contempt of David S. Terry. In open court.

"Whereas on this 3d day of September, 1888, in open court, and in the presence of the judges thereof, to wit, Hon. Stephen J. Field, Circuit Justice, presiding; Hon. Lorenzo

Sawyer, Circuit Judge, and Hon. George M. Sabin, District Judge, during the session of said court, and while said court was engaged in its regular business, hearing and determining causes pending before it, one Sarah Althea Terry was guilty of misbehavior in the presence and hearing of said court;

"And whereas, said court thereupon duly and lawfully ordered the United States marshal, J. C. Franks, who was then present, to remove the said Sarah Althea Terry from the court-room;

"And whereas the said United States marshal then and there attempted to enforce said order, and then and there was resisted by one David S. Terry, an attorney of this court, who, while the said marshal was attempting to execute said order in the presence of the court, assaulted the said United States marshal, and then and there beat him, the said marshal, and then and there wrongfully and unlawfully assaulted said marshal with a deadly weapon, with intent to obstruct the administration of justice, and to resist such United States marshal and the execution of the said order;

"And whereas the said David S. Terry was guilty of a contempt of this court by misbehavior in its presence and by a forcible resistance in the presence of the court to a lawful order thereof, in the manner aforesaid:

"Now, therefore, be it ordered and adjudged by this court, That the said David S. Terry, by reason of said acts, was, and is, guilty of contempt of the authority of this court, committed in its presence on this 3d day of September, 1888;

"And it is further ordered, That the said David S. Terry be punished for said contempt by imprisonment for the term of six months;

"And it is further ordered, That this judgment be executed by imprisonment of the said David S. Terry in the county jail of the county of Alameda, in the State of California, until the further order of this court, but not to exceed said term of six months;

"And it is further ordered, That a certified copy of this order, under the seal of the court, be process and warrant for executing this order."

The petition alleges that "said order was made by said court in the absence of your petitioner, and without his having any notice of the intention of said court to take any proceeding whatever in relation to the matters referred to in said order, and without giving your petitioner any opportunity whatever of being heard in defence of the charges therein made against him."

The petition proceeds:

"And your petitioner further showeth that on the 12th day of September, 1888, he addressed to the said Circuit Court a petition, duly verified by his oath, in the words and figures following, to wit:

*'In the Circuit Court of the United States, Ninth Circuit, Northern District of California.*

'In the Matter of Contempt of David S. Terry.

'To the Honorable Circuit Court aforesaid:

'The petition of David S. Terry respectfully represents:

'That in all the matters and transactions occurring in the said court on the 3d day of September, inst., upon which the order in this matter was based, your petitioner did not intend to say or do anything disrespectful to said court or the judges thereof, or to any one of them; that when petitioner's wife, the said Sarah Althea Terry, first arose from her seat, and before she uttered a word, your petitioner used every effort in his power to cause her to resume her seat and remain quiet; and he did nothing to encourage her in her acts of indiscretion; when this court made the order that petitioner's wife be removed from the court-room, your petitioner arose from his seat with the purpose and intention of himself removing her from the court-room, quietly and peaceably, and had no intention or design of obstructing or preventing the execution of the said order of the court; that he never struck or offered to strike the United States marshal until the said marshal had assaulted himself, and had in his presence violently, and, as he believed, unnecessarily, assaulted petitioner's wife.

'Your petitioner most solemnly avers that he neither drew

or attempted to draw any deadly weapon of any kind whatever in said court-room, and that he did not assault or attempt to assault the United States marshal with any deadly weapon in said court-room or elsewhere.

'And in this connection he respectfully represents that after he had left said court-room he heard loud talking in one of the rooms of the United States marshal, and among the voices proceeding therefrom he recognized that of his wife, and he thereupon attempted to force his way into said room through the main office of the United States marshal; the door of this room was blocked with such a crowd of men that the door could not be closed; that your petitioner then for the first time drew from inside his vest a small sheath knife, at the same time saying to those standing in his way in said door, that he did not want to hurt any one; that all he wanted was to get in the room where his wife was; the crowd then parted, and your petitioner entered the doorway, and there saw a United States deputy-marshal with a revolver in his hand pointed to the ceiling of the room; some one then said, "Let him in, if he will give up his knife," and your petitioner immediately released hold of the knife to some one standing by.

'In none of these transactions did your petitioner have the slightest idea of showing any disrespect to this honorable court or any of the judges thereof.

'That he lost his temper, he respectfully submits, was a natural consequence of himself being assaulted when he was making an honest effort to peacefully and quietly enforce the order of the court so as to avoid a scandalous scene, and of seeing his wife so unnecessarily assaulted in his presence.

'Wherefore your petitioner respectfully requests that this honorable court may, in the light of the facts herein stated, revoke the order made herein committing him to prison for six months.

'And your petitioner will ever pray, etc.

'Dated Sept. 12, 1888.'"

The petitioner states that on the 17th of September, 1888, the Circuit Court "declined and refused to grant to your petitioner the relief prayed for or any other relief."

He also insists, in his petition, that the "Circuit Court had no jurisdiction of his person at the time it made the order hereinbefore set forth, and possessed no lawful power to make said order, and that he was entitled to be relieved from his said imprisonment upon the filing of the petition aforesaid, and that said order of said court is otherwise illegal and unwarranted by the law of the land."

That he may be relieved of said detention and imprisonment, he prays that he may be forthwith brought before this court, upon writ of *habeas corpus*, to do, submit to and receive what the law may require.

The above presents the entire case made by the application before us. ·

There can be no dispute either as to the power or duty of this court in cases of this character. Its power to issue a writ of *habeas corpus* for the purpose of inquiring into the cause of the restraint of the liberty of the person in whose behalf the writ is asked, is expressly conferred by statute, and extends to the cases, among others, of prisoners in jail under or by color of the authority of the United States, and of persons who are in custody in violation of the Constitution or laws of the United States. Rev. Stat. §§ 751, 752, 753. Its general duty in such cases is also prescribed by statute. Upon complaint in writing, signed by, and verified by the oath of the person for whose relief it is intended, setting forth the facts concerning the detention of the party restrained, in whose custody he is detained, and by virtue of what claim or authority, if known, it is the duty of the court to "forthwith award a writ of *habeas corpus*, unless it appears from the petition itself that the party is not entitled thereto." Rev. Stat. §§ 754, 755. The writ need not, therefore, be awarded if it appear upon the showing made by the petitioner, that if brought into court, and the cause of his commitment inquired into, he would be remanded to prison. *Ex parte Kearney,* 7 Wheat. 38, 45; *Ex parte Watkins,* 3 Pet. 193, 201; *Ex parte Milligan,* 4 Wall. 2, 11.

It is proper in this connection to say that since the passage of the act of March 3, 1885, c. 353, 23 Stat. 437, amending

§ 764 of the Revised Statutes so as to give this court jurisdiction, upon appeal, to review the final decisions of the Circuit Courts of the United States in cases of *habeas corpus*, when the petitioner alleges that he is restrained of his liberty in violation of the Constitution or laws of the United States, the right to the writ, upon original application to this court, is not, in every case, an absolute one. In *Wales* v. *Whitney*, 114 U. S. 564, it appears that a direct application to this court for the writ, after a decision adverse to the petitioner in the Supreme Court of the District of Columbia, was abandoned on the suggestion that he could bring that decision to this court for review under the act of 1885 ; and it was brought here under that statute. In *Ex parte Royall*, 117 U. S. 241, 250, upon appeal from a decision of a Circuit Court of the United States refusing to award the writ to one alleging that he was restrained of his liberty in violation of the Constitution of the United States by an order of a State court, in which he stood indicted for an alleged offence against the laws of such State, it was held that while the Circuit Court had power to grant the writ and discharge the accused in advance of his trial under the indictment, it was not bound to exercise that power immediately upon application being made for the writ, but could await the result of the trial, and, in its discretion, as the special circumstances of the case might require, put the petitioner to his writ of error from the highest court of the State. In *Sawyer's Case*, 124 U. S. 200, this court entertained an original application for a writ of *habeas corpus* without requiring the petitioner to apply, in the first instance, to the proper Circuit Court; but, in that case, as in this, the application proceeded upon the ground that the Circuit Court itself had made the order by which he was alleged to have been deprived of his liberty in violation of the Constitution of the United States.

Nor can there be any dispute as to the power of a Circuit Court of the United States to punish contempts of its authority. In *United States* v. *Hudson*, 7 Cranch, 32, it was held that the courts of the United States, from the very nature of their institution, possess the power to fine for con-

tempt, imprison for contumacy, enforce the observance of order, etc. In *Anderson* v. *Dunn*, 6 Wheat. 204, 227, it was said that "courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect and decorum in their presence, and submission to their lawful mandates." So, in *Ex parte Robinson*, 19 Wall. 505, 510: "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in, judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." *Ex parte Bollman*, 4 Cranch, 75, 94; Story, Constitution, § 1774; Bac. Ab. Courts, E. And such is the recognized doctrine in reference to the powers of the courts of the several States. "The summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice," the Supreme Judicial Court of Massachusetts well said, in *Cartwright's Case*, 114 Mass. 230, 238, "is inherent in Courts of Chancery and other Superior Courts, as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land, within the meaning of Magna Charta and of the twelfth article of our Declaration of Rights." The Declaration of Rights here referred to was that which formed part of the constitution of Massachusetts, and contained the prohibition, inserted in most of the American constitutions, against depriving any person of life, liberty, or estate, except by the judgment of his peers, or the law of the land. So in *Cooper's Case*, 32 Vermont, 253, 257: "The power to punish for contempt is inherent in the nature and constitution of a court. It is a power not derived from any statute, but arising from necessity; implied, because it is necessary to the exercise of all other powers." Without such power, it was observed in *Easton* v. *State*, 39 Alabama, 551, the administration of the law would be in continual danger of being thwarted by the lawless. To the same effect are *Watson* v. *Williams*, 36 Mississippi, 331, 344;

*Johnston* v. *Commonwealth*, 1 Bibb, 598 ; *Clark* v. *People*, *Breese* (1 Illinois), 266 ; *Commonwealth* v. *Dandridge*, 2 Va. Cases, 408 ; *Ex parte Hamilton & Smith*, 51 Alabama, 66, 68 ; *Redman* v. *State*, 28 Indiana, 205, 212 ; *People* v. *Turner*, 1 California, 152, 153 ; *State* v. *Morrill*, 16 Arkansas, 384, 388 ; and numerous cases cited in note to *Clark* v. *People, ubi supra,* in 12 Am. Dec. 178. See also *Queen* v. *Lefroy*, L. R. 8 Q. B. 134. But this power, so far as the Circuit Courts of the United States are concerned, is not simply incidental to their general power to exercise judicial functions ; it is expressly recognized, and the cases in which it may be exercised are defined, by acts of Congress. They have power, by statute, "to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority : *Provided*, That such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree or command of the said courts." Rev. Stat. § 725 ; 1 Stat. 83 ; 4 Stat. 487.

With these observations as to the power and duty of the courts of the United States, when applied to for writs of *habeas corpus*, we proceed to the consideration of the general question as to whether the petition in this case shows that the prisoner is or is not entitled to the writ. The contention of his counsel is, that the Circuit Court failed to take such steps as were necessary to give jurisdiction of the person of the prisoner at the time the order was made committing him to jail for contempt ; and, therefore, that the order was illegal, and the writ should be awarded. If this position is sound, the conclusion stated would necessarily follow ; for while the writ may not be used to correct mere errors or irregularities, however flagrant, committed within the sphere of the authority of the court, it is an appropriate writ to obtain the discharge of one imprisoned under the order of a court of the United States which does not possess jurisdiction of the person or of the sub-

ject-matter. *Ex parte Lange*, 18 Wall. 163 ; *Ex parte Parks*, 93 U. S. 18 ; *Ex parte Siebold*, 100 U. S. 371 ; *Ex parte Rowland*, 104 U. S. 604 ; *Ex parte Curtis*, 106 U. S. 371 ; *In re Ayers*, 123 U. S. 443, 485 ; *In re Sawyer*, 124 U. S. 200, 221 ; *Harvey* v. *Tyler*, 2 Wall. 328, 345 ; *Ex parte Fisk*, 113 U. S. 713, 718. In this last case it was said that when "a court of the United States undertakes, by its process of contempt, to punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for the contempt is equally void. It is well settled now, in the jurisprudence of this court, that when the proceeding for contempt in such a case results in imprisonment, this court will, by its writ of *habeas corpus*, discharge the prisoner." A judgment which lies without the jurisdiction of a court, even one of superior jurisdiction and general authority, is, upon reason and authority, a nullity.

This question, it must be here observed, does not involve an inquiry into the truth of the specific facts recited in the order of commitment, as constituting the contempt. As the writ of *habeas corpus* does not perform the office of a writ of error or an appeal, these facts cannot be re-examined or reviewed in this collateral proceeding. They present a case which, so far as the subject-matter is concerned, was manifestly within the jurisdiction of the Circuit Court. Notwithstanding the statements made in the petition addressed to the Circuit Court on the 12th of September, as to what the petitioner did, and as to what he did not do, on the occasion referred to in the order of commitment, it must be taken as true, upon the present application, and would be taken as true, upon a return to the writ if one were awarded, that, on the 3d of September, 1888, Mrs. Terry was guilty of misbehavior in the presence of the judge of the Circuit Court, while they were engaged in the hearing and determination of causes pending before it ; that the court thereupon ordered the marshal to remove her from the court-room ; that the petitioner, an attorney, and, therefore, an officer of the court, resisted the enforcement of the order by beating the marshal, and by assaulting him with a deadly

weapon, with intent to obstruct the administration of justice and the execution of said order. It must also be taken as true, upon the present application, that what the petitioner characterizes as self-defence against an assault of the marshal, but which the Circuit Court in its order of commitment expressly finds, upon its personal view of the facts, was violence and misconduct upon his part, occurred in its immediate presence; for, if it were competent in this proceeding for the petitioner to contradict that fact, this has not been done. While in his petition to this court he disputes the jurisdiction of the Circuit Court of his person at the time he was imprisoned, his petition addressed to that court on the 12th of September, and made part of the present application, makes no question as to the alleged contempt having been committed in the presence of the Circuit Court, and only puts in issue the principal facts recited in the order of commitment as constituting the contempt for which he was punished. Those facts necessarily entered into the inquiry by the Circuit Court as to whether the prisoner was or was not guilty of contempt, and this court cannot, in this proceeding, in virtue of any power conferred upon it by existing legislation, go behind the determination of them by that court. It can deal only with such defects in the proceedings as render them, not simply erroneous or irregular, but absolutely void. *Ex parte Robinson*, 19 Wall. 505, 511; *Ex parte Kearney*, 7 Wheat. 38, 43.

What, then, are the grounds upon which the petitioner claims that the Circuit Court was without jurisdiction to make the order committing him to jail? They are: 1. That the order was made in his absence; 2. That it was made without his having had any previous notice of the intention of the court to take any steps whatever in relation to the matters referred to in the order; 3. That it was made without giving him any opportunity of being first heard in defence of the charges therein made against him.

The second and third of these grounds may be dismissed as immaterial in any inquiry this court is at liberty, upon this original application, to make. For, upon the facts recited in the order of September 3, showing a clear case of contempt

committed in the face of the Circuit Court, which tended to destroy its authority, and, by violent methods, to embarrass and obstruct its business, the petitioner was not entitled, of absolute right, either to a regular trial of the question of contempt, or to notice by rule of the court's intention to proceed against him, or to opportunity to make formal answer to the charges contained in the order of commitment. It is undoubtedly a general rule in all actions, whether prosecuted by private parties, or by the government, that is, in civil and criminal cases, that " a sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal." *Windsor* v. *McVeigh*, 93 U. S. 274, 277. But there is another rule, of almost immemorial antiquity, and universally acknowledged, which is equally vital to personal liberty and to the preservation of organized society, because upon its recognition and enforcement depend the existence and authority of the tribunals established to protect the rights of the citizen, whether of life, liberty, or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of individuals. It has relation to the class of contempts which, being committed in the face of a court, imply a purpose to destroy or impair its authority, to obstruct the transaction of its business, or to insult or intimidate those charged with the duty of administering the law. Blackstone thus states the rule: " If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination. But in matters that arise at a distance, and of which the court cannot have so perfect a knowledge, unless by the confession of the party or the testimony of others, if the judges upon affidavit see sufficient ground to suspect that a contempt has been committed, they either make a rule on the suspected party to show cause why an attachment should not issue against him; or, in very flagrant instances of contempt, the attachment issues in the first instance, as it also does if no sufficient cause be shown to discharge, and thereupon the

court confirms and makes absolute the original rule." 4 Bl. Com. 286. In Bacon's Abridgment, title Courts, E, it is laid down that "every court of record, as incident to it, may enjoin the people to keep silence, under a pain, and impose reasonable fines, not only on such as shall be convicted before them of any crime on a formal prosecution, but also on all such as shall be guilty of any contempt in the face of the court, as by giving opprobrious language to the judge, or obstinately refusing to do their duty as officers of the court, and immediately order them into custody." It is utterly impossible, said Abbott, C. J., in *Rex* v. *Davidson*, 4 B. & Ald. 329, 333, "that the law of the land can be properly administered if those who are charged with the duty of administering it have not power to prevent instances of indecorum from occurring in their own presence. That power has been vested in the judges, not for their personal protection, but for that of the public. And a judge will depart from his bounden duty if he forbears to use it when occasions arise which call for its exercise."

To the same effect are the adjudications by the courts of this country. In *State* v. *Woodfin*, 5 Iredell's Law, 199, where a person was fined for a contempt committed in the presence of the court, it was said: "The power to commit or fine for contempt is essential to the existence of every court. Business cannot be conducted unless the court can suppress disturbances and the only means of doing that is by immediate punishment. A breach of the peace *in facie curiæ* is a direct disturbance and a palpable contempt of the authority of the court. It is a case that does not admit of delay, and the court would be without dignity that did not punish it promptly and without trial. Necessarily there can be no inquiry *de novo* in another court, as to the truth of the fact. There is no mode provided for conducting such an inquiry. There is no prosecution, no plea, nor issue upon which there can be a trial." So in *Whittem* v. *State*, 36 Indiana, 311: "When the contempt is committed in the presence of the court, and the court acts upon view and without trial and inflicts the punishment, there will be no charge, no plea, no issue and no trial; and the record that

shows the punishment will also show the offence, and the fact that the court had found the party guilty of the contempt; on appeal to this court any fact found by the court below would be taken as true, and every intendment would be made in favor of the action of the court." Again, in *Ex parte Wright*, 65 Indiana, 504, 508, the court after observing that a direct contempt is an open insult in the face of the court to the persons of the judges while presiding, or a resistance to its powers in their presence, said: "For a direct contempt the offender may be punished instantly by arrest and fine or imprisonment, upon no further proof or examination than what is known to the judges by their senses of seeing, hearing, etc." 4 Stephens Com. Bk. 6, c. 15; Tidd's Practice, 9th ed. London, 1828, 479–80; *Ex parte Hamilton & Smith*, 51 Alabama, 66, 68; *People* v. *Turner*, 1 California, 152, 155.

It is true, as counsel suggest, that the power which the court has of instantly punishing, without further proof or examination, contempts committed in its presence, is one that may be abused and may sometimes be exercised hastily or arbitrarily. But that is not an argument to disprove either its existence, or the necessity of its being lodged in the courts. That power cannot be denied them without inviting or causing such obstruction to the orderly and impartial administration of justice as would endanger the rights and safety of the entire community. What was said in *Ex parte Kearney*, 7 Wheat. 38, 45, may be here repeated: "Wherever power is lodged it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice."

It results from what has been said that it was competent for the Circuit Court, immediately upon the commission, in its presence, of the contempt recited in the order of September 3, to proceed upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form. It was not bound to hear any explanation of his motives, if it was satisfied, and we must conclusively presume,

from the record before us, that it was satisfied, from what occurred under its own eye and within its hearing, that the ends of justice demanded immediate action, and that no explanation could mitigate his offence or disprove the fact that he had committed such contempt of its authority and dignity as deserved instant punishment. Whether the facts justified such punishment was for that court to determine under its solemn responsibility to do justice, and to maintain its own dignity and authority. *In re Chiles*, 22 Wall. 157, 168. Its conclusion upon such facts, we repeat, is not, under the statutes regulating the jurisdiction of this court, open to inquiry or review in this collateral proceeding. If we were to indulge in any presumption as to what actually occurred when the marshal proceeded in the execution of the order to remove Mrs. Terry from the court-room, we must presume that the Circuit Court fully considered the statements contained in the petition of September 12, and knowing them to be inaccurate or untrue, refused to set aside or modify its previous order of commitment. Its action in that regard cannot be revised or annulled by this court upon an original application for *habeas corpus*.

But it is contended that the order of September 3 was void, because, as alleged in the present application for the writ of *habeas corpus*, it was made in the "absence" of the petitioner. In considering this suggestion, it must not be forgotten that the order of imprisonment shows, and the fact is not asserted to be otherwise, that it was made and entered on the same day on which, and, presumably, at the same session of the court at which, the contempt was committed; and there is no claim that any more time intervened between the commission of the contempt, and the making of the order, than was reasonably required to prepare and enter in due form such an order as the court, upon consideration, deemed proper or necessary. Indeed, the petition of September 12, made part of the present application, shows that the petitioner, after his personal conflict with the marshal in the presence of the judges, voluntarily left the court-room, and with drawn knife forced his way into another room in the same building, occu-

pied by the marshal, and to which, we presume, the latter, in executing the order above referred to, had removed Mrs. Terry. There is no pretence that the petitioner left the building in which the court was held before the order of commitment was passed.

The precise question, therefore, to be now determined, is whether the retirement of the petitioner from the court-room, into another room of the same building, after he had been guilty of misbehavior in the presence of the court, and had violently obstructed the execution of its lawful order, defeated the jurisdiction which it possessed, at the moment the contempt was committed, to order his immediate imprisonment without other proof than that supplied by its actual knowledge and view of the facts, and without examination or trial in any form? In our judgment this question must be answered in the negative. Jurisdiction of the person of the petitioner attached instantly upon the contempt being committed in the presence of the court. That jurisdiction was neither surrendered nor lost by delay on the part of the Circuit Court in exercising its power to proceed, without notice and proof, and upon its own view of what occurred, to immediate punishment. The departure of the petitioner from the court-room to another room, near by, in the same building, was his voluntary act. And his departure, without making some apology for, or explanation of, his conduct, might justly be held to aggravate his offence, and to make it plain that, consistently with the public interests, there should be no delay, upon the part of the court, in exerting its power to punish.

If, in order to avoid punishment, he had absconded or fled from the building, immediately after his conflict with the marshal, the court, in its discretion, and as the circumstances rendered proper, could have ordered process for his arrest and given him an opportunity, before sending him to jail, to answer the charge of having committed a contempt. But in such a case the failure to order his arrest, and to give him such opportunity of defence, would not affect its power to inflict instant punishment. Jurisdiction to inflict such punishment having attached while he was in the presence of the court, it

would not have been defeated or lost by his flight and voluntary absence. Upon this point the decision in *Middlebrook* v. *State*, 43 Connecticut, 257, 268, is instructive. That was a case of contempt committed by a gross assault upon another in open court. The offender immediately left the court-house and the State. The court made reasonable efforts to procure his personal attendance, and, those failing, a judgment was entered in his absence, sentencing him to pay a fine and to be imprisoned for contempt of court. One of the questions presented for determination was whether there was jurisdiction of the person of the absent offender. The court said : " The offence was intentionally committed in the presence of the court. When the first blow was struck, that instant the contempt was complete, and jurisdiction attached. It did not depend upon the arrest of the offender, nor upon his being in actual custody, nor even upon his remaining in the presence of the court. When the offence was committed he was in the presence and, constructively, at least, in the power of the court. He may by flight escape merited punishment; but that cannot otherwise affect the right or the power of the court. Before the court could exert its power, the offender, taking advantage of the confusion, absented himself and went beyond the reach of the court; but, nevertheless, the jurisdiction remained, and it was competent for the court to take such action as might be deemed advisable, leaving the action to be enforced and the sentence carried into execution whenever there might be an opportunity to do so. If it was necessary that the judgment should be preceded by a trial, and the facts found upon a judicial hearing as with ordinary criminal cases, it would be otherwise. But in this proceeding nothing of the kind was required. The judicial eye witnessed the act and the judicial mind comprehended all the circumstances of aggravation, provocation, or mitigation; and the fact being thus judicially established, it only remained for the judicial arm to inflict proper punishment." It is true that the present case differs from the one just cited in that the offender did not attempt by flight to escape punishment for his offence. But that circumstance could not affect the power of the Circuit

Court, without trial or further proof, to inflict instant punishment upon the petitioner for the contempt committed in its presence. It was within the discretion of that court, whose dignity he had insulted, and whose authority he had openly defied, to determine whether it should, upon its own view of what occurred, proceed at once to punish him, or postpone action until he was arrested upon process, brought back into its presence, and permitted to make defence. Any abuse of that discretion would be at most an irregularity or error, not affecting the jurisdiction of the Circuit Court.

We have not overlooked the earnest contention of petitioner's counsel that the Circuit Court, in disregard of the fundamental principles of Magna Charta, in the absence of the accused, and without giving him any notice of the accusation against him, or any opportunity to be heard, proceeded "to accuse, to try and to pronounce judgment, and to order him to be imprisoned; this, for an alleged offence committed at a time preceding, and separated from, the commencement of his prosecution." We have seen that it is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them. To say, in case of a contempt such as is recited in the order below, that the offender was accused, tried, adjudged to be guilty and imprisoned, without previous notice of the accusation against him and without an opportunity to be heard, is nothing more than an argument or

protest against investing any court, however exalted, or however extensive its general jurisdiction, with the power of proceeding summarily, without further proof or trial, for direct contempts committed in its presence.

Nor, in our judgment, is it an accurate characterization of the present case to say that the petitioner's offence was committed "at a time preceding, and separated from, the commencement of his prosecution." His misbehavior in the presence of the court, his voluntary departure from the court-room without apology for the indignity he put upon the court, his going a few steps, and under the circumstances detailed by him, into the marshal's room in the same building where the court was held, and the making of the order of the commitment, took place, substantially, on the same occasion, and constituted, in legal effect, one continuous complete transaction, occurring on the same day, and at the same session of the court. The jurisdiction, therefore, of the Circuit Court to enter an order for the offender's arrest and imprisonment was as full and complete as when he was in the court-room in the immediate presence of the judges.

Whether the Circuit Court would have had the power at a subsequent term, or at a subsequent day of the same term, to order his arrest and imprisonment for the contempt, without first causing him to be brought into its presence, or without making reasonable efforts by rule or attachment to bring him into court, and giving him an opportunity to be heard before being fined and imprisoned, is a question not necessary to be considered on the present hearing.

*The application for the writ of habeas corpus is denied.*

Mr. Justice Field took no part in the decision of this case.