## In re MOONEY.
### No. 7557.

Circuit Court of Appeals, Ninth Circuit.
July 25, 1934.

504

Frank P. Walsh and John F. Finerty, both of New York City, and George Thomas Davis, of San Francisco, Cal., for petitioner Mooney.

Before SAWTELLE, Circuit Judge.

SAWTELLE, Circuit Judge.

On May 7, 1934, Thomas J. Mooney presented his petition for a writ of habeas corpus to the District Court of the United States for the Northern District of California, Southern Division, upon the ground that he was in custody in violation of the Constitution of the United States and particularly the Fourteenth Amendment thereof. Petitioner alleges:

"That your petitioner is now and for the past eighteen years has been actually unjustly and unlawfully in prison and restrained of his liberty and detained under color of the authority of the State of California, in the custody of James B. Holohan, Warden of San Quentin Penitentiary, Marin County, California, in said District, and has never before made application for a writ of Habeas Corpus in any United States Court.

"That the sole claim and authority by which the said James B. Holohan, Warden of San Quentin Penitentiary, so restrains and retains your petitioner, is a commitment of the Superior Court of the State of California, in and for the City and County of San Francisco, a copy of which commitment is attached hereto, and hereinafter referred to by exhibit number.

"That such commitment was based upon an indictment, judgment of conviction of murder in the first degree, and sentence of death upon such judgment of conviction, said sentence of death being subsequently commuted to life imprisonment, and other legal proceedings arising out of the trial of your petitioner; that true and correct copies of the papers filed as a part of the legal proceedings above referred to, viz.: indictment, verdict of the jury, judgment of conviction and sentence of death upon such judgment of conviction, motion for new trial, order denying motion for new trial, notice of appeal to the Supreme Court of the State of California, statement in general terms of the grounds of appeal to the Supreme Court of the State of California, opinion of the Supreme Court of the State of California affirming said judgment of conviction, remittitur, commitment and commutation of sentence, are attached hereto and by reference made a part of the petition. * * *

"That the verdict of the jury, judgment of conviction, and sentence of death thereon, commitment, imprisonment, and restraint of your petitioner are, and each of them is, without due process of law, and in violation of the Fourteenth Amendment of the Constitution of the United States by reason of the following facts:

"A. That said verdict of the jury, judgment of conviction, sentence, commitment, imprisonment and restraint of your petitioner were obtained by the State of California by the presentation against your petitioner by the State of California, through its then District Attorney and his assistants, of the perjured testimony of certain witnesses hereinafter more particularly specified, which testimony your petitioner alleges was known by said District Attorney and his assistants to be perjured at the time it was offered in the trial of your petitioner, upon which said conviction was had. * * *

"Your petitioner further alleges that while he knew that such testimony when presented to the trial court was untrue, and suspected it was perjured, he was taken completely by surprise, and could not by any reasonable diligence have discovered prior to the denial of his motion for a new trial and his appeal to the Supreme Court of the State of California, the evidence subsequently developed impeaching and refuting such testimony and proving it perjured. ᵗ *

"In support of the foregoing grounds for the issuance of the writ, your petitioner makes the following allegations of fact, in support of which reference will be made to certain documentary and testimonial evidence. Where such reference is made, true and accurate copies of such documents and testimony as are referred to will be attached and made a part of this petition as exhibits and will be referred to by exhibit number."

The "allegations of fact," referred to above, cover 95 typewritten pages, and the exhibits referred to in the petition contain approximately 600 pages additional.

The District Court was of the opinion that petitioner had not exhausted his remedy in the state court, and that he should apply to the Supreme Court of California for relief; and, further, that the petition on its face showed that petitioner was not entitled to the writ. The petition was denied and ordered dismissed.

The court likewise denied petitioner's application for an appeal to the United States Circuit Court of Appeals for the Ninth Circuit, being of the opinion that no probable cause existed therefor.

Thereupon a petition for a certificate of probable cause and for an appeal was presented to the writer.

Section 466, title 28 USCA, provides: *"Appeal to circuit court of appeals; certificate of probable cause.* From a final decision by a court of the United States in a proceeding in habeas corpus where the detention complained of is by virtue of process issued out of a State court no appeal to the circuit court of appeals shall be allowed unless the United States court by which the final decision was rendered or a judge of the circuit court of appeals shall be of opinion that there exists probable cause for an appeal, in which event, on allowing the same, the said court or judge shall certify that there is probable cause for such allowance."

The question to be determined therefore is whether there exists probable cause for an appeal. The material recitals of the petition must be accepted for the purposes of this proceeding only as true. Glasgow v. Moyer, 225 U. S. 420, 428, 32 S. Ct. 753, 56 L. Ed. 1147. In the case of Frank v. Mangum, 237 U. S. 309, 332, 35 S. Ct. 582, 589, 59 L. Ed. 969, the Supreme Court of the United States said: "It was the duty of the court to refuse the writ if it appeared from the petition itself that appellant (petitioner) was not entitled to it"; and in Re Terry, 128 U. S. 289, 301, 9 S. Ct. 77, 78, 32 L. Ed. 405: "The writ need not * ᵗ * be awarded, if it appear upon the showing made by the petitioner that, if brought into court, and the cause of his commitment inquired into, he would be remanded to prison."

The same principles govern upon application for a certificate of probable cause.

Approximately eighteen years have passed since the judgment of the state court became final. During all of these years petitioner has suffered imprisonment in the state penitentiary.

The record discloses that petitioner appealed from the judgment of conviction and from the order of the trial court denying a motion for a new trial to the Supreme Court of the state of California, where the judgment and order were affirmed. The case of People v. Mooney, on appeal, is reported in 175 Cal. 666, 166 P. 999; 176 Cal. 105, 167 P. 696; 177 Cal. 642, 171 P. 690; 178 Cal. 525, 174 P. 325, and also in 248 U. S. 579, 39 S. Ct. 21, 63 L. Ed. 430, where the Supreme Court of the United States refused to grant certiorari to review the proceeding of the Supreme Court of California as reported in 178 Cal. 525, 174 P. 325.

Petitioner contends that by reason of certain constitutional and statutory limitations the state courts are powerless to grant him any relief, and that petitioner's only remedy is in the federal courts.

■ The fact that petitioner did not learn of the alleged perjured testimony and of the alleged misconduct of the District Attorney who prosecuted him until it was too late to assign same as grounds for a new trial, is indeed unfortunate. Nevertheless, "The state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions of the Federal Constitution." Brown v. New Jersey, 175 U. S. 172, 175, 20 S. Ct. 77, 78, 44 L. Ed. 119. See, also, cases cited to note 81, USCA Const.,

part 3, p. 63. The state may therefore fix the time within which a motion for a new trial must be filed and the time within which the Supreme Court may review a judgment of conviction.

In Twining v. New Jersey, 211 U. S. 78, 110, 29 S. Ct. 14, 24, 53 L. Ed. 97, the Supreme Court said: "The decisions of this court, though they are silent on the precise question before us, ought to be searched to discover if they present any analogies which are helpful in its decision. The essential elements of due process of law, already established by them, are singularly few, though of wide application and deep significance. We are not here concerned with the effect of due process in restraining substantive laws, as, for example, that which forbids the taking of private property for public use without compensation. We need notice now only those cases which deal with the principles which must be observed in the trial of criminal and civil causes. Due process requires that the court which assumes to determine the rights of parties shall have jurisdiction [cases cited], and that there shall be notice and opportunity for hearing given the parties [cases cited]; and see [case cited]. Subject to these two fundamental conditions, which seem to be universally prescribed in all systems of law established by civilized countries, this court has, up to this time, sustained all state laws, statutory or judicially declared, regulating procedure, evidence, and methods of trial, and held them to be consistent with due process of law. [Cases cited.]"

Again, in Jordan v. Massachusetts, 225 U. S. 167, 176, 32 S. Ct. 651, 652, 56 L. Ed. 1038.: "It is no longer open to contention that the due process clause of the 14th Amendment to the Constitution of the United States does not control mere forms of procedure in state courts or regulate practice therein. All its requirements are complied with, provided in the proceedings which are claimed not to have been due process of law the person condemned has had sufficient notice, and adequate opportunity has been afforded him to defend. [Cases cited.]"

And again, in the case of Frank v. Mangum, supra, 237 U. S. 309, 325–327, 35 S. Ct. 582, 586, 59 L. Ed. 969:

"In dealing with these contentions [i. e., that there had been a departure from the due process of law guaranteed by · the 14th Amendment sufficient to bring about a loss of jurisdiction and to render the verdict and judgment absolute nullities, etc.,], we should have in mind the nature and extent of the duty that is imposed upon a Federal court on application for the writ of habeas corpus under section 753, Rev. Stat. [28 USCA § 453]. Under the terms of that section, in order to entitle the present appellant to the relief sought, it must appear that he is held in custody in violation of the Constitution of the United States. [Case cited.] Moreover, if he is held in custody by reason of his conviction upon a criminal charge before a court having plenary jurisdiction over the subject-matter or offense, the place where it was committed, and the person of the prisoner, it results from the nature of the writ itself that he cannot have relief on habeas corpus. Mere errors in point of law, however serious, committed by a criminal court in the exercise of its jurisdiction over a case properly subject to its cognizance, cannot be reviewed by habeas corpus. · That writ cannot be employed as a substitute for the writ of error. [Cases cited.]

"As to the 'due process of law' that is required by the 14th Amendment, it is perfectly well settled that a criminal prosecution in the courts of a state, based upon a law not in itself repugnant to the Federal Constitution, and conducted according to the settled course of judicial proceedings as established by the law of the state, so long as it includes notice and a hearing, or an opportunity to be heard, before a court of competent jurisdiction, according to established modes of procedure, is 'due process' in the constitutional sense. [Cases cited.]

"It is therefore conceded by counsel for appellant that, in the present case, we may not review irregularities or erroneous rulings upon the trial, however serious, and that the writ of habeas corpus will lie only in case the judgment under which the prisoner is detained is shown to be absolutely void for want of jurisdiction in the court that pronounced it, either because such jurisdiction was absent at the beginning, or because it was lost in the course of the proceedings."

In Knewel v. Egan, 268 U. S. 442, 445, 446, 447, 45 S. Ct. 522, 524, 69 L. Ed. 1036, the same court used language peculiarly pertinent to the questions here under consideration:

"It is the settled rule of this court that habeas corpus calls in question only the jurisdiction of the court whose judgment is challenged. [Cases cited.]

"A person convicted of crime by a judgment of a state court may secure the review of that judgment by the highest state court

and if unsuccessful there may then resort to this court by writ of error if an appropriate federal question be involved and decided against him, or if he be imprisoned under the judgment, he may proceed by writ of habeas corpus on constitutional grounds summarily to determine whether he is restrained of his liberty by judgment of a court acting without jurisdiction. [Cases cited.] * * *

"Moreover, as this case was conducted in the state court, the ultimate question presented is whether the procedure established by the statutes of South Dakota providing that failure to allege venue in the information is waived, unless demurred to, is a denial of a constitutional right. With respect to that question, we hold, as this court has repeatedly held, that the judgment of state courts in criminal cases will not be reviewed on habeas corpus merely because some right under the Constitution of the United States is alleged to have been denied to the person convicted. The proper remedy is by writ of error [appeal]. Markuson v. Boucher, 175 U. S. 184, 20 S. Ct. 76, 44 L. Ed. 124."

Finally, in the case of Ashe v. U. S. ex rel. Valotta, 270 U. S. 424, 426, 46 S. Ct. 333, 334, 70 L. Ed. 662, Mr. Justice Holmes said: "There was not the shadow of a ground for interference with this sentence by habeas corpus. Frank v. Mangum, 237 U. S. 309, 326, 35 S. Ct. 582, 59 L. Ed. 969. Extraordinary cases where there is only the form of a court under the domination of a mob as was alleged to be the fact in Moore v. Dempsey, 261 U. S. 86, 43 S. Ct. 265, 67 L. Ed. 543, offer no analogy to this. *In so delicate a matter as interrupting the regular administration of the criminal law of the State by this kind of attack too much discretion cannot be used, and it must be realized that it can be done only upon definitely and narrowly limited grounds.*" (Italics my own.)

See, also, Glasgow v. Moyer, Warden, 225 U. S. 420, 32 S. Ct. 753, 56 L. Ed. 1147.

In the latest opinion in the Mooney Case, 178 Cal. 525, 174 P. 325, 326, Supreme Court of California, inter alia, said:

"The defendant applies to the court for a certificate of probable cause on his appeal from an order of the superior court denying his motion to set aside the judgment and sentence heretofore pronounced against him. His object is to obtain a stay of execution of the judgment under section 1243 of the Penal Code.

"He was regularly convicted of the crime of murder, and was sentenced on February 24, 1917. He moved for a new trial and his motion was denied. Thereafter he appealed to the Supreme Court from the judgment and from the order denying a new trial and on March 1, 1918, said judgment and order were affirmed. [177 Cal. 642] 171 P. 690. The present proceeding was begun by a notice of motion filed in the superior court on April 28, 1918, which was after the affirmance of the judgment and order by the Supreme Court had become final. The grounds of the motion involved in this appeal, as set forth in said notice and in his oral motion in open court, are that the verdict of the jury, the order denying a new trial, the judgment, and the sentence, were procured through the willful nonfeasance, malfeasance, and willful fraud of the district attorney and his assistants, who conducted the prosecution, committed upon the superior court, the jury, and the defendant, Mooney, whereby defendant was deprived of a fair and impartial trial, and which prevented a fair submission of the cause. These general averments are not sufficient as a charge of fraud, under any rule of pleading, civil or criminal, known to our law. [Cases cited.] In order to ascertain the facts constituting the asserted fraud, we must look to the affidavits offered in evidence in support of the motion at the hearing in the court below.

"The crime charged was committed July 22, 1916, on Steuart street, near Market, in San Francisco, by the explosion of a bomb. On the trial it was the theory of the prosecution that the bomb, inclosed in a suitcase, had been carried to the place in an automobile by Mooney, Billings, and others, all of whom rode in the automobile, and that it was deposited on the sidewalk by Billings a few minutes before it exploded.

"The affidavits set forth that two witnesses, Mrs. Edeau and Frank C. Oxman, testified at the trial that they, respectively, saw the defendant, at about the time and near the place of the explosion, in the company of the other persons accused of the crime, and under circumstances tending strongly to show that Mooney was a participant therein, which testimony, it is alleged, was wholly false, and that prior to the trial the district attorney was informed that certain statements had been made out of court by Mrs. Edeau which tended to show that she had never seen Mooney until after his arrest upon the charge of murder set forth

508

in the indictment, and which, if shown, would have impaired her credibility with the jury. With regard to Oxman, it is asserted in the affidavits that certain information was given to the district attorney before the trial, which, it is claimed, would have tended to discredit Oxman as a witness. The affidavits are vague and unsatisfactory on this subject, and it is doubtful if they even tend to show that the information possessed by the district attorney and his assistants was of a character that should have raised a suspicion in their minds of Oxman's credibility. These alleged discrediting circumstances were not communicated to Mooney or his attorneys by the prosecution, and they had no knowledge thereof until after the trial, nor until after their motion for a new trial had been denied, and the judgment pronounced.

"It must be admitted that the showing of fraud or misconduct on the part of the district attorney and his assistants in conducting the trial is of the weakest character, even if he were under any duty or obligation to disclose to the defendant all the evidence within his knowledge relating to the case. But we do not place our denial of the application for a certificate of probable cause entirely upon this ground. There are other reasons which lead us to conclude that the motion below, and the appeal from the order denying it, are alike without merit.

"The proceedings by way of motion to set aside the judgment, when made after the judgment has been rendered and has become final, and after a motion for a new trial has been denied and the time therefor has expired, is in the nature of an application for a writ coram nobis, at common law. Mr. Freeman, referring to the nature of this proceeding at common law, says: 'But this writ does not lie to correct any error in the judgment of the court, nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself. If this could be, there would be no end of litigation. * * * The writ of error coram nobis is not intended to authorize any court to review and revise its opinions, but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have *prevented the rendition of the judgment,* and which without fault or negligence of the party, was not presented to the court.' 1 Freeman on Judgments, § 94. The italics are ours. The learned judge of the court below, in giving his decision on the motion, delivered an opinion from which we quote and adopt the portions applicable here: * * *

" 'In the case at bar the defendant was not denied his defense. On the contrary, a trial was had, a motion for new trial was made by him, and appeal taken. These were the remedies provided by our statute to the exclusion of any common-law remedy. The statute, in other words, takes the place of the writ, and only in cases where there is no remedy by statute may we look to the common law.

" 'In the trial of the case of Thomas J. Mooney the truth or falsity of the testimony of the witnesses Oxman and Edeau was a part of the issue submitted to the jury, and that issue, upon the return of the verdict, became an adjudicated issue of fact, which cannot now by the writ of coram nobis be readjudicated. The remedy in such case is by motion for a new trial, and if newly discovered evidence is too late in its production, its consideration cannot be brought about under the guise of a motion to vacate the judgment upon the ground of fraud. The defendant in such case is without remedy. * * *'

"For these reasons, the application for a certificate of probable cause is denied."

It thus appears that in the state proceeding just referred to petitioner contended "that the verdict of the jury, the order denying a new trial, the judgment, and the sentence were procured through the willful nonfeasance, malfeasance, and willful fraud of the district attorney, and his assistants who conducted the prosecution, committed upon the superior court, the jury, and the defendant Mooney, *whereby defendant was deprived of a fair and impartial trial and which prevented a fair submission of the cause.*" In other words, that the constitutional guaranty of due process of law found in the Fourteenth Amendment had been violated. Notwithstanding such contention, as stated above, a petition for a writ of certiorari to review said decision of the Supreme Court of California was denied by the Supreme Court of the United States. 248 U. S. 579, 39 S. Ct. 21, 63 L. Ed. 430.

The same claim of denial of due process of law is set forth in the petition for a certificate of probable cause now under consideration. I have studied the record with great care and have found therein nothing that would justify the issuance of a certificate of probable cause for an appeal. The state courts had jurisdiction of the petitioner and of the subject-matter or offense, and that jurisdiction was never lost during the course of the proceedings in said courts. Un-

der the facts as stated, the judgment of the state courts cannot be reviewed on habeas corpus. It is manifest that the corrective process supplied by the state was adequate to review errors committed by the trial court. The tragedy of the situation, as shown by the petition, is that petitioner was not informed of the alleged perjured testimony and of the alleged misconduct of the prosecuting attorney until it was too late to avail himself of the remedy thus secured to him.

The petition is denied.