**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth Eugene EVANS,
Defendant-Appellant.**

**No. 77–5139.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 19, 1977.

Decided April 14, 1978.

Rehearing Denied June 12, 1978.

Richard A. Golden (Court-appointed), Southfield, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Steven W. Rhodes, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before. PECK and ENGEL, Circuit Judges, and DUNCAN, District Judge.*

PECK, Circuit Judge.

On April 28, 1976, defendant-appellant Evans was found guilty by a jury of possession of a firearm after conviction for a felony. On appeal, he argues that a gun ·found in his apartment, along with a statement made by him to police officers, were illegally obtained and should have been excluded from the evidence.

The Detroit Police Department received a complaint from Evans on July 4, 1975, at about 6:15 p.m., that his taxicab and his wallet had been stolen earlier that afternoon. At about 5 p.m., a passenger in the same cab had reported that he had been robbed at gunpoint by the driver. Their suspicions aroused by the delay between the time Evans claimed his cab was stolen and the time he contacted the police, the investigating officers fed Evans' name and description into the computerized Law Enforcement Information Network (LEIN). The police officers discovered that Evans had a criminal record and that three outstanding traffic court warrants were entered against him; one for ignoring a stop sign, one for driving through private property, and one for allowing a passenger to ride in the front seat.

The police officers went to Evans' apartment to question him concerning his report of the theft. After some routine questions, they informed him that they were going to have to arrest him on the traffic warrants. Evans became extremely nervous and agitated at this point, and eventually had to be handcuffed and led to the police car.

---

* Honorable Robert M. Duncan, United States District Court for the Southern District of Ohio, sitting by designation.

On the way back to the station, one of the officers was talking to Evans, and (in his own words) "encouraging or—I should say, just letting him know I was wondering why—what did he have to hide; 'Why are you so worried about the whole thing, why didn't you want us to come into your room?'" Transcript at 46. After further questioning about whether Evans had a "ghost in the closet," Evans admitted to the officer that he had a gun in his room. According to the officer's testimony, he immediately told Evans to say no more, and for the first time advised him of his rights.

Knowing that Evans had a criminal record, and that possession of a firearm by a felon was a federal offense, the officers contacted the federal authorities. A search warrant was obtained for the apartment, and a revolver was discovered under the bed pillows.

Evans argues that the traffic warrants pursuant to which he was arrested were unconstitutionally issued, and that his arrest was therefore illegal. His incriminating remarks to the police were tainted by that illegal arrest, and therefore both his statements and the revolver are "fruit of the poisonous tree" and should not have been admitted into evidence against him. We agree, and hold that his conviction must be vacated and remanded.

At the evidentiary hearing on the motion to suppress, Mr. Trupiano, Supervisor of the Court Clerical Services of the traffic court which issued these warrants, testified as to the procedures followed in the issuance of arrest warrants. At the end of each day, all the tickets issued to persons who have failed to appear are gathered together and delivered to a typist who prepares a list of the ticket numbers. It is unclear how many of these "no-shows" there might be in any one day, but apparently there would normally be several hundred. The tickets are then sent directly to the warrant department for issuance of a warrant.

The list of ticket numbers is presented to the judge along with a signature form. The top portion of the form reads: "I have examined the attached list of cases and find that none of the defendants named therein have appeared on their court date. A warrant is, therefore, requested on all the attached cases." A blank follows for the clerk's signature. There next appears a printed form of an order for a warrant, "it appearing that the offenses have been committed and there is just cause to suspect the respective persons therein accused to have committed these offenses." The warrant is issued "in each of the said foregoing cases *based upon said complaint.*" [Emphasis supplied.] This portion of the form is signed by the judge and placed in the court's journal.

Evans argues that there was never a determination that probable cause existed to believe he committed the offenses described in the warrants, and that the warrants therefore were issued unconstitutionally. The constitutional standard for judging the validity of arrest warrants was set out in *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958):

> [T]he inferences from the facts which lead to the complaint [must] "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the "probable cause" required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime.

*Id.,* at 486, 78 S.Ct. at 1250 (citations omitted). Here warrants were issued for Evans' arrest based on the complaint of a police officer. It is clear that no determination of probable cause to believe Evans committed the offenses described in the traffic tickets was ever made by the judge who issued the warrants; in fact he never saw the tickets, but merely a list of numbers. Nor is there any indication that his clerk examined the

tickets (which are sworn to by the policeman who issued them and thus would be sufficient to support a warrant) to make sure that the actions described constituted a crime.

The Government argues that these warrants were not based on the violations contained in the complaint, but on the failure to appear in court, and that the judge had probable cause to believe that Evans had not appeared, based on his clerk's affidavit. It is true that normally, when an accused person or a subpoenaed witness fails to appear in court, the judge will issue a bench warrant ordering that person arrested and brought before the court. Such warrants are clearly valid and based on probable cause and our holding today does not affect them in the least. However, every indication in the record is that these warrants issued for Evans' arrest were not bench warrants based on his failure to appear, but arrest warrants, based on the complaint described in the ticket. The statute authorizing the warrants states:

> If after the service of an appearance ticket and the filing of a complaint for the offense designated therein the defendant does not appear in the designated local criminal court at the time the appearance ticket is returnable, the court may issue a summons or warrant *based upon the complaint filed.* (Emphasis supplied.)

Mich.Comp. Laws Ann. § 764.9e, Mich.Stat. Ann. § 28.868(5). The form signed by the judge ordering the issuance of warrants states that they are to be "based upon said complaint." The warrants themselves state that Evans was to be arrested for "the offense therein indicated," which is the traffic offense.**

The Government next contends that traffic judges are justified in assuming that each ticket adequately states a complaint and is regular and consistent in form. It also argues that a holding that the judges must make a determination of probable cause would result in their merely "flipping through the tickets" and glancing at the offense described. The language quoted above from *Giordenello* disposes of the first contention. The official issuing a warrant must judge for himself or herself the persuasiveness of the facts; otherwise there would be little point in interposing a "neutral and detached magistrate" between a citizen and an arresting officer. As for the second point, to the extent that the Government is suggesting that the judges and magistrates will shirk their duty to make a reasoned determination of probable cause before ordering interference with a person's liberty, we reject the suggestion. Furthermore, if a "glance" at the ticket is sufficient to convince the judge that the complaining officer has described activity which constitutes a crime, so be it—the requirements of the Fourth Amendment are fully satisfied. We also note that there is no necessity that the judge personally examine the tickets; it is clear that this task may be delegated to a clerk. *Shadwick v. City of Tampa,* 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972).

The Government does not press the argument that despite the illegal arrest, Evans' incriminating remarks were "an act of free will unaffected by the initial illegality" of the arrest, and thus admissible under the standards set out in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Since the burden rests on the prose-

** The dissent argues that the judge who issued these warrants possessed the *power* to issue bench warrants based on nonappearance, but we do not question that. Nor do we doubt the validity and desirability of the citation system Michigan uses in traffic and local misdemeanor cases. However, the question is not what the judge *could* do, but what, in legal effect, he *did* do. We conclude that the judge did not exercise his power to issue bench warrants; he exercised his power to issue arrest warrants. Michigan law requires that all warrants contain

the substance of the complaint and set forth and describe the alleged offense fully and correctly. *People v. Belcher,* 58 Mich. 325, 25 N.W. 303 (1885); *In re Reno,* 321 Mich. 497, 32 N.W.2d 723 (1948). Thus, assuming arguendo that the judge here intended to issue bench warrants for nonappearance (in spite of the fact that both the warrant order and the warrants themselves state that they are based on the complaints), the warrants would still be invalid because they do not state the grounds upon which they were issued.

cution to make such a showing, we need not decide whether the fact that this was merely a "technical" violation of appellant's rights, an arrest apparently made in complete good faith based on warrants only later determined to be illegal, offsets the fact that Evans' incriminating remarks were made soon after his arrest, before he was informed of his rights, and without any intervening events to break the chain of coercion created by his arrest. *See Wong Sun v. United States*, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The appellant's conviction is vacated and this case is remanded to the district court for further proceedings consistent with this opinion.

ENGEL, Circuit Judge, dissenting.

I respectfully dissent. The majority opinion recognizes that the Detroit traffic court issued the warrants upon the defendant's failure to appear but nevertheless concludes that the warrants rested upon the underlying traffic offenses and were invalid because there had been no independent judicial determination of probable cause. Upon an examination of the record, I would hold, under the circumstances here, that the warrants were the equivalent of bench warrants issued for nonappearance and were valid.

At the time of the arrest in question, there were three outstanding warrants against Evans for traffic offenses. Two citations relied upon violations of the State of Michigan's Motor Vehicle Code: failing to obey a stop sign in violation of Mich. Comp. Laws § 257.611(1), and driving through private property to avoid a traffic control device, contrary to Mich.Comp. Laws § 257.611(2). The third ticket was issued for driving a taxicab with a passenger in the front seat, a violation, according to the ticket, of the Municipal Code of the City of Detroit.

The Michigan statutory scheme contains separate provisions for violations of the state's vehicle code and for violations of misdemeanors generally or city ordinances cognizable by a justice of the peace or municipal judge. Thus, while Mich.Comp. Laws § 764.9e cited by the majority, covers procedures for appearance tickets in the latter category and would thus govern procedures for the violation of the municipal ordinance involved in the third traffic ticket, there are also separate and distinct provisions respecting procedures involving violations of the Michigan Vehicle Code which would govern the first two warrants. *See* Mich.Comp. Laws §§ 257.728–.729.

In my opinion a warrant which, in fact, was issued for failure to appear under Mich. Comp. Laws § 764.9e is not necessarily invalid because the statute authorizes warrants "based upon the complaint filed" and because it appears that the traffic court made no independent examination to determine probable cause pertaining to the underlying offense. However that may be, the validity of the arrest here did not depend solely upon the provisions for "appearance tickets" in Section 764.9e, since two earlier outstanding warrants involved traffic citations, not appearance tickets, and were subject to the procedures of Mich. Comp. Laws § 257.728 *et seq.*

Section 257.728 provides:

**257.728   Arrest without warrant**

Sec. 728.   (a) **Preparation of citation, inform offender copy; appearance before magistrate or probate court in lieu of citation.** When a person is arrested without a warrant for a violation of this act [Michigan Vehicle Code] punishable as a misdemeanor, or of a provision of an ordinance substantially corresponding to a provision of this act, . . . the arresting officer shall prepare, as soon as possible and as completely as possible, an original and 3 copies of a written citation to appear in court containing the name and address of the person, the offense charged, and the time and place when and where the person shall appear in court. The officer shall inform the offender of the violation and shall give the third copy of the citation to the alleged offender. If the arrested person so demands, he shall be taken before a magistrate or probate court . . . in lieu of being given the citation.

Unlike the procedure for appearance tickets, which authorizes warrants "based upon the complaint filed," Section 257.729 simply stresses the nonappearance of the accused:

### 257.729 Failure to appear; new license not issued during default; fine and cost

Sec. 729. Upon failure of any person to appear before a magistrate [to enter a plea upon a traffic citation], . . . the magistrate shall notify the secretary of state upon forms prescribed by him who shall not issue a new license to such person during his default to appear and answer such charge. In addition to any fine assessed for such charge when found guilty, the magistrate may also add to any fine and costs levied additional costs incurred in compelling the appearance of the accused which additional costs shall be returned to the general fund of the unit of government incurring such costs.

Moreover, Michigan has a separate set of court rules for those courts having jurisdiction over traffic offenses. D.C.R. 2003.5(a) indicates that the failure to appear triggers the issuance of a warrant:

### 2003.5 Procedure on Failure to Appear; Warrant; Notice.

(a) Residents. The court shall issue a warrant for the arrest of any defendant who is a resident of the State of Michigan and who fails to appear or answer a traffic citation or summons served upon him and upon which a complaint was filed; said warrant to be issued within ten (10) days after the scheduled appearance date. In addition, the court shall follow the procedures outlined in [Mich.Comp. Laws § 257.321a].

That a warrant issued under such circumstances and pursuant to such laws would come within the general concepts of a bench warrant is fortified by the penalties authorized by the statute for disobedience to the command of the summons. Under Mich.Comp. Laws § 257.729, a violation of the duty to appear as required by the citation subjects the violator to certain penalties not unlike those which might attach for contempt of court, i. e., the imposition of additional costs. Furthermore, under Mich. Comp. Laws § 257.321a, failure to answer a traffic citation itself specifically constitutes a separate criminal offense punishable as a misdemeanor. Thirty days after the nonappearance of the accused, the court must mail him a notice informing him that "if he fails to appear within 10 days from such notice the secretary of state shall suspend his . . . license." Section 257.321a. The suspension remains in effect until the accused makes his appearance. *Id.* Finally, the secretary shall not issue a new license during the period of default. Section 257.729.

The fact that failure to appear plays such a central role in the statutory scheme, coupled with the testimony of Anthony Trupiano concerning procedures in Detroit traffic court, convinces me that at least two of the warrants in this case were bench warrants based solely upon Evans' nonappearance and not upon the underlying traffic complaints.[1]

I do not believe that the Fourth Amendment is offended by the statutory scheme here or its employment in this particular case. *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), is properly concerned with the power of police officers to issue their own self-serving warrants, to execute them, and thereby to deprive an individual of a significant aspect of his freedom without the intervention of an impersonal determination of probable cause. *See also Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). That circumstance does not exist on the facts here. Michigan could have constitutionally empowered the arresting officer to arrest the defendant for a misdemeanor committed in his presence and to take him to the station house, without the previous issuance of a warrant or determination of probable cause. It seems a reasonable alternative to a custodial arrest to permit the

---

1. Contrary to the majority, I do not view *People v. Belcher,* 58 Mich. 325 (1885), and *In re Reno,* 321 Mich. 497, 32 N.W.2d 723 (1948), as fixing any formal requirements for the validity of bench warrants.

358

issuance of a summons or a citation, as provided by the Michigan statutory scheme. The issuance of citations, therefore, advances rather than retards the constitutional protection of the accused by minimizing the infringements on his liberty. That being the case, I see nothing wrong with a notice to appear voluntarily in court to answer to charges of a violation of either a state law or local ordinance.

There is no suggestion that the complaints were invalid. They notified the defendant of the charge and informed him by personal service that he was to appear to respond to them. Thus, when he failed to appear, the court issued warrants to compel his appearance, and I do not think under the circumstances that the Fourth Amendment requires any individual judicial officer to inquire into the substance of the basic complaints for probable cause. It is enough that the complaints were made, that he was summoned to appear upon them, and that he failed to do so. It suffices that probable cause inquiries were made to determine whether he appeared to respond to the complaints—decisions which were fully within the knowledge of the clerk and the trial judge and thus compliant with *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972). I would uphold Judge Kennedy's decision to admit evidence derived from the warrants and would affirm the conviction.