**STATE of Minnesota, Respondent,**

v.

**Jeffrey David MOHS, Appellant.**

No. A06–199.

Court of Appeals of Minnesota.

Jan. 30, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant County Attorney, Anoka County Government Center, Anoka, MN, for respondent.

Stephen V. Grigsby, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; PETERSON, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

This case concerns the constitutionality of a bench warrant issued upon a district court judge's personal observation and knowledge that the defendant failed to appear for trial. Jeffrey Mohs appeals from his conviction for a controlled-substance offense, arguing that the drugs he discarded when police attempted to execute a bench warrant for his arrest should have been suppressed as evidence because the bench warrant was constitutionally invalid. He claims that the bench warrant, which the district court issued because Mohs failed to appear for trial on a different charge, violated the federal and state constitutions because it did not rest on probable cause, because the court issued the warrant without support by oath or affirmation, and because the warrant lacked a bail provision. Because the warrant was not constitutionally deficient, we affirm.

## FACTS

Jeffrey Mohs failed to appear in Anoka County District Court on November 1, 2004, for a scheduled pretrial hearing for a misdemeanor offense and for a jury trial on felony charges that the district court had previously determined were supported

by probable cause. Mohs's counsel appeared and informed the court that he had not heard from Mohs and did not know where he was. On the prosecutor's motion, the court issued a bench warrant ordering law enforcement "to apprehend and arrest and promptly bring [Mohs] before [the] court" because of Mohs's failure to appear for the two scheduled proceedings. The warrant, dated and signed by the issuing judge, indicated "Body Only" instead of stating a bail amount.

The next day, police observed Mohs leaving a home in Blaine and walking toward his truck. When Mohs noticed the police approaching, he reached into his pockets, threw items from his pockets onto the ground, and stomped on the discarded items. Police quickly arrested Mohs and seized the items he had discarded: a smashed glass pipe of the type commonly used to smoke controlled substances and a plastic bag containing methamphetamine.

The state charged Mohs with felony fifth-degree controlled-substance crime. The following day, the district court set bail. Mohs moved to suppress the seized evidence, asserting that the bench warrant that led to his arrest for failure to appear was constitutionally invalid because it was not facially supported by probable cause or by oath or affirmation, and because it was designated as "body only" rather than specifying bail. The district court denied the motion, finding that the prosecutor's statements to the issuing judge on the record in open court established probable cause to support the warrant and that the state constitution does not require arrest warrants to provide for bail.

To expedite his appeal, Mohs waived his right to a jury trial and submitted the case to the district court on stipulated facts contained in the police reports under the procedure outlined in *State v. Lothenbach*, 296 N.W.2d 854, 857–58 (Minn.1980). The district court found Mohs guilty and sentenced him to jail, but it stayed the sentence pending this appeal.

## ISSUES

I. Does a district court have probable cause to issue a bench warrant for the defendant's arrest when the defendant fails to appear at a scheduled trial?

II. Does a district court judge who issues a bench warrant for the arrest of a criminal defendant based solely on the judge's own observations and personal knowledge that the defendant did not appear for his scheduled jury trial, rather than on a witness's oath or affirmation declaring the failure to appear, violate the Fourth Amendment to the United States Constitution or article I, section 10, of the Minnesota Constitution?

III. Does a bench warrant that fails to specify an amount of bail violate article I, section 7, of the Minnesota Constitution?

## ANALYSIS

We note preliminarily that the district court acted within its statutory authority when issuing the bench warrant. It is undisputed that a district court is authorized by statute to issue an arrest warrant when a defendant fails to appear for a hearing or trial of which he had notice. *See* Minn.Stat. § 629.58 (2004) (stating that when criminal defendant under bond fails to perform conditions of bond, court "shall issue process" against the person); *see also id.* § 629.49 (2004) (requiring that

a person who is released on recognizance and who fails to appear "must be apprehended" and directing the court to order further disposition according to rule 6 of the Minnesota Rules of Criminal Procedure); *State v. Murr*, 443 N.W.2d 833, 835 (Minn.App.1989) (stating that court may issue bench warrant for defendant's arrest when prosecutor's affidavit alleges defendant violated conditions of release and it reasonably appears highly likely that defendant will fail to respond to summons or defendant's whereabouts unknown), *review denied* (Minn. Sept. 27, 1989). The rules of criminal procedure in effect when the court issued the warrant provide that "[u]pon an application of the prosecuting attorney, alleging that a defendant has violated the conditions of release, the judge ... may issue a warrant directing that the defendant be arrested and taken forthwith before such judge." Minn. R.Crim. P. 6.03, subd. 1. The district court followed this process, but Mohs challenges the grounds on which the district court issued the warrant.

■ Mohs argues that the bench warrant was constitutionally invalid because it failed to recite probable cause for any offense and because it did not rely on any facts submitted under oath or affirmation. He also argues that the warrant was constitutionally defective because it did not provide for bail. We review the district court's decisions as to constitutionality de novo. *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340, 344 (Minn.2005).

**I**

■ We first address Mohs's contention that the bench warrant was unconstitutionally issued because it is unsupported by probable cause. Courts may issue warrants only upon probable cause. U.S.

Const. amend. IV; Minn. Const. art. I, § 10. Mohs's failure to appear was an offense that occurred in the presence of the judge, and the district court found that the failure constituted probable cause to support the bench warrant. Appellate courts give great deference to an issuing court's probable cause determination. *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn.2001). Mohs does not dispute that he was required to appear in court on November 1, 2004, and that he did not appear. The scheduling of the November criminal proceedings, the appearance of Mohs's attorney as scheduled, and Mohs's absence from the courtroom when the district court called his case for trial obviously support the district court's determination that the bench warrant rests on probable cause that Mohs failed to appear.

**II**

■ Relying on the state and federal constitutional provisions that no warrant shall issue "but upon probable cause, supported by oath or affirmation," Mohs next argues that a judge may not rely solely on his own observations to determine that probable cause exists to issue a bench warrant for a defendant who has failed to appear as ordered. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Mohs urges that the federal and state constitutions require a separate oath or affirmation attesting to what the judge has personally observed and the events that occurred in the court's presence (specifically, here, the defendant's absence). We disagree. While the constitutionality of a bench warrant issued without oath or affirmation is a question of first impression in Minnesota, the authority for a judicial officer to issue a bench warrant for acts occurring in the

court's presence is well established in history before and after ratification of the Fourth Amendment.

Before the founding of the nation, the drafting of the Constitution, or the adoption of the Fourth Amendment, Sir William Blackstone described the recognized judicial authority to direct the arrest of persons who commit offenses in the court's presence, but the need for testimony or affidavit for the court to direct the arrest of persons whose misconduct occurs outside the court's presence:

> If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any farther proof or examination. But in matters that arise at a distance, and of which the court cannot have so perfect a knowle[d]ge, unless by the confession of the party or the testimony of others, if the judges upon *affidavit* see sufficient ground to suspect that a contempt has been committed, they [may] ... make a rule on the suspected party to sh[o]w cause why an attachment should not issue against him....

William Blackstone, 4 *Commentaries* *283.

Twenty years after the signing of the Constitution and sixteen years after the Fourth Amendment's ratification, in argument to the Supreme Court headed by Chief Justice Marshall in 1807, an attorney for the District of Columbia similarly noted the general proposition that a court has the power to "issue a bench-warrant ... for an offen[s]e committed in the presence of the court." *Ex parte Bollman,* 8 U.S. (4 Cranch) 75, 115, 2 L.Ed. 554 (1807). We point this out to demonstrate only the extant commonality of the practice; the *Bollman* Court did not have occasion to express the authority for bench warrants in its opinion, which addressed whether a pre-indictment writ of habeas corpus would overcome allegations of treason. *Id.* at 134–36.

Over sixty-five years later, the Court declared the central principle, explaining that "[t]he power to punish for contempts is inherent in all courts." *Ex parte Robinson,* 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873). The Supreme Court soon described a court's authority to order arrest for violations committed in the court's presence to be "of almost immemorial antiquity, and universally acknowledged." *In re Terry,* 128 U.S. 289, 307, 9 S.Ct. 77, 80, 32 L.Ed. 405 (1888). The Court recognized the "settled doctrine," which predated the Constitution, that for "direct contempts committed in the face of the court, ... the offender may ... be instantly apprehended ... without other proof than [the court's] actual knowledge of what occurred." *Id.* at 313, 9 S.Ct. at 83. Although the *Terry* Court did not specifically refer to the Fourth Amendment, it denied a habeas petitioner's claim that the circuit court lacked authority to commit him to prison for contempt for an act committed in the court's presence. Implicit in *Terry*'s reasoning is that judicial authority to order arrest for offenses committed "in the face of the court" without additional proof is consistent with the Fourth Amendment's liberty safeguards; the Court declared it to be a doctrine confirmed by "an unbroken chain of authorities, reaching back to the earliest times" and one that is "never supposed to be in conflict with the liberty of the citizen." *Id.*

In 1927, the Supreme Court finally had occasion to consider squarely a court's authority to issue bench warrants for failure to appear based on the court's own knowl-

edge and without supporting sworn testimony specifically in light of the Fourth Amendment. In *McGrain v. Daugherty,* 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927), a habeas petitioner had been arrested on a warrant issued by a Senate committee for failing to appear in response to a subpoena. The Court relied specifically on the "settled rulings that courts, in dealing with contempts committed in their presence, may order commitments without other proof than their own knowledge of the occurrence, and ... may issue attachments, based on their own knowledge of the default, where intended witnesses ... fail to appear in obedience to process." *Id.* at 157, 47 S.Ct. at 323 (footnotes omitted). Like Mohs, the petitioner in *McGrain* relied on the provision of the Fourth Amendment that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation," arguing that the warrant was void because it was based on an unsworn report. *Id.* at 156, 47 S.Ct. at 322. The Court rejected this argument, reasoning that the well-settled authority that courts may rely on their own knowledge of an offender's failure to appear without requiring further oath or affirmation beyond the oath of office should extend to legislative proceedings as well. *Id.* at 156–58, 47 S.Ct. at 322–23. At least one state court has followed this approach. The Nebraska Supreme Court has held that a judge may issue a bench warrant without a supporting affidavit when the incident supporting probable cause for the warrant's issuance occurs in the court's presence, reasoning that "[t]he personal knowledge exception to the affidavit requirement recognizes the common-sense notion that there is no point in a judge executing an affidavit when that judge has personal knowledge of facts establishing probable cause." *State v.*

*Davidson,* 260 Neb. 417, 618 N.W.2d 418, 425–26 (2000) (quotation marks omitted).

Mohs argues that we should find a constitutional violation because his failure to appear is analogous to a constructive contempt rather than a direct contempt, relying on *Knajdek v. West,* 278 Minn. 282, 153 N.W.2d 846 (1967). The argument is not convincing. The *Knajdek* court addressed a personal-injury attorney's conviction of criminal contempt and the consequent 60-day sentence of incarceration as punishment based on his alleged willful and inexcusable failure to follow court orders in a dispute over settlement proceeds. *Knajdek,* 278 Minn. at 283–84, 153 N.W.2d at 847. The district court had convicted the attorney of contempt, in part, for being 20 minutes late to a scheduled hearing, and the *Knajdek* court considered whether the district court could convict and sentence the attorney as punishment without a jury trial. *Id.* It reasoned that the tardiness was "an act wholly performed" and that punishment for that act therefore "could have no remedial effect, and its only purpose was to maintain and vindicate the authority of the court." *Id.* at 285, 153 N.W.2d at 848. Whether the punishment was proper turned on the statutory and common-law distinction between "direct contempts," which may be heard and punished summarily, and "constructive contempts," which may not. *Id.* In contrast to this case, no constitutional issue was before the *Knajdek* court. Here, we are asked instead to impose constitutional limits on the district court's inherent authority to direct the sheriff to issue an arrest warrant not to punish but to "promptly bring [Mohs] before [the] court" after he failed to appear for his criminal trial. No criminal penalty was issued summarily, or at all, by the district court. The sole function of the warrant was not to incar-

cerate as punishment, but to return Mohs to the court to complete the criminal proceedings on charges already under prosecution. The holding and reasoning in *Knajdek* are inapposite to that question. We hold that the bench warrant that was issued to secure Mohs's appearance to stand trial for a charge for which probable cause had already been established did not offend the oath-or-affirmation clause of the Fourth Amendment.

This analysis also defeats Mohs's challenge under the state constitution. The Fourth Amendment's language requiring an oath or affirmation is included word-for-word in the state constitution, and Mohs does not suggest that the state constitution entitles him greater protection in the issuance of a bench warrant than that afforded to him under the federal Constitution. The Supreme Court's interpretation of a provision of the United States Constitution with language identical to a provision of the Minnesota Constitution is "of inherently persuasive" force in interpreting the state provision. *State v. Fuller*, 374 N.W.2d 722, 727 (Minn.1985). And our supreme court has also cautioned that a decision to interpret the Minnesota Constitution differently than the federal Constitution should not be made cavalierly. *State v. Carter*, 596 N.W.2d 654, 657 (Minn.1999). We therefore apply the Supreme Court's reasoning in *McGrain v. Daugherty* and hold that the issuance of the bench warrant without additional oath or affirmation did not violate article I, section 10, of the Minnesota Constitution.

## III

■ We last address Mohs's contention that the bench warrant was constitutionally defective because it did not specify bail. The argument is not persuasive. Mohs relies solely on the state constitution's pro-

vision that "[a]ll persons before conviction shall be bailable by sufficient sureties, except for capital offenses" to support his argument that every arrest warrant must provide for bail and that "body-only" warrants are prohibited. Minn. Const., art. I, § 7. This provision neither expressly states nor implies that all arrest warrants must provide for bail. And the rule requiring that an issuing judge must set the amount of bail on the warrant applies only to warrants initially issued upon a complaint. Minn. R.Crim. P. 3.02, subd. 1. Mohs does not dispute that the district court set bail for his release within 36 hours after his return to court after apprehension on the bench warrant. Mohs has not identified a constitutional violation.

## DECISION

Probable cause for the bench warrant was apparent from the undisputed facts that developed in the district court's presence and that are also indicated on the face of the warrant. Because Mohs's failure to appear for trial occurred in the presence of the district court judge, we conclude that the judge validly issued the bench warrant for Mohs's arrest without a separate supporting oath or affirmation attesting to what the judge already knew and personally observed. Finally, we conclude that the "body-only" bench warrant was not constitutionally required to include a bail provision. The issuance of the bench warrant was necessary to effectuate an essential judicial function to return a defendant to court for a scheduled trial on a charge for which probable cause had previously been determined. Mohs has identified no constitutional infirmity in the district court's exercise of its authority to complete the criminal prosecution.

**Affirmed.**