STATE of Minnesota, Respondent,

v.

Jeffrey David MOHS, Appellant.

No. A06–199.

Supreme Court of Minnesota.

Jan. 10, 2008.

Stephen Vincent Grigsby, Minneapolis, MN, for Appellant.

Marcy S. Crain, Anoka County Attorney's Office, Anoka, MN, Lori Swanson, Attorney General, St. Paul, MN, for Respondent.

OPINION

ANDERSON, Paul H., Justice.

After Jeffrey David Mohs failed to appear for a pretrial hearing and a jury trial, the Anoka County District Court issued a bench warrant for his arrest. While executing this warrant, the police discovered and seized a plastic bag containing methamphetamine. Mohs was subsequently charged with a fifth-degree controlled substance offense. Mohs moved to suppress the evidence seized during his arrest, claiming that the bench warrant violated the federal and state constitutions because it was not based upon probable cause supported by oath or affirmation and did not specify a bail amount. The district court denied Mohs's motion, and Mohs was convicted of the fifth-degree controlled substance offense following a court trial. The Minnesota Court of Appeals affirmed the district court's denial of Mohs's suppression motion on appeal. We affirm.

Appellant Jeffrey David Mohs was scheduled to appear before the Anoka County District Court at 8:30 a.m. on November 1, 2004, for a pretrial hearing on a misdemeanor violation of an order for protection charge and for a jury trial on a felony pattern of harassing conduct charge. The district court called Mohs's case at approximately 9:00 a.m., but Mohs was not present. Mohs still had not appeared when the court went on the record in his cases at 9:49 a.m. After Mohs's attorney stated that Mohs was aware of the date of the hearing and the time that he was to appear, the court indicated that it would grant the state's request for a bench warrant, but that it would "certainly take care of [Mohs]" if he appeared later in the day. The facts regarding Mohs's knowledge of the hearing and his nonappearance were not submitted to the court through an affidavit or sworn testimony.

On the bench warrant, the district court marked a box next to preprinted language stating: "The defendant failed to appear before this court on ------ pursuant to the Order of the Court for ------." The court typed "11–01–04" in the first blank and "Pretrial [misdemeanor case number] Jury Trial [felony case number]" in the second blank. In preprinted language, the warrant ordered "the Sheriff of Anoka County or any other person authorized by law to execute this warrant * * * to apprehend and arrest and promptly bring the defendant before this court without unnecessary delay, not later than 36 hours after arrest or as soon thereafter as such judge is available, to be dealt with according to law." In the place designated for a bail amount, the court wrote "Body Only." The warrant was dated "11/1/04" and signed by the court.

Later that day, Mohs appeared at the Anoka County courthouse and approached the prosecuting attorney in the hallway. The prosecutor told Mohs that a warrant had been issued because he had not appeared and that his attorney had left the courthouse, but that Mohs could appear before the court to schedule a new trial date. The prosecutor also told Mohs that the state would not seek further bail or arrest if a new trial date was set that day. Mohs left the courthouse without appearing before the court and did not reappear to schedule a new trial date.

The next afternoon, a police officer with the Blaine Police Department was attempting to enforce the warrant and received information that Mohs might be at his girlfriend's house. While parked in a police car on a public street near the house, the police officer saw Mohs leave the house and walk toward his truck. The truck was parked on the street across from the house. After Mohs apparently saw the police car, the officer saw Mohs remove

some items from his pockets, throw them on the ground, and stomp on them. The officer then approached Mohs, arrested him, and searched the area where the officer had seen Mohs throw the objects from his pockets. During this search, the officer found a smashed glass pipe and a plastic bag containing a white crystalline powder. Subsequent laboratory tests established that the powder in the bag contained methamphetamine.

Based on the evidence found by the police officer, Mohs was charged on November 3, 2004, with one count of fifth-degree controlled substance offense for possession of methamphetamine. On that same day, the district court reinstated Mohs's original bonds and set bail at an additional $3,000 on the original misdemeanor violation of an order for protection and felony pattern of harassing conduct charges. The next day, the district court also set bail on the new controlled substance charge at a Rule 5 hearing.

Mohs subsequently filed a motion to suppress the evidence seized during his arrest, arguing that the bench warrant violated the federal and state constitutions because it was not based upon probable cause supported by oath or affirmation and did not provide for bail. The district court denied Mohs's motion on May 25, 2005. The court concluded that "so long as probable cause to support the warrant is affirmed, the manner in which the oath is made, whether it appears upon the face of the warrant or the record in Court, does not render the warrant unconstitutional,"

and that the necessary facts of Mohs's failure to appear were affirmed on the record before the bench warrant was issued. With regard to bail, the court concluded that defendants are entitled to a bail hearing within 36 hours of arrest, not to have the bail amount set forth in the warrant.

Following the district court's ruling, Mohs submitted his case for a court trial on a stipulated factual record from the police reports pursuant to *State v. Lothenbach.*[1] A week later, the district court found Mohs guilty of the fifth-degree controlled substance offense. On December 30, 2005, the district court ordered that adjudication of this matter be stayed for 5 years. The court of appeals affirmed the district court's order, concluding that the bench warrant was supported by probable cause that Mohs failed to appear, that the warrant "did not offend the oath-or-affirmation clause[s]" in the federal and state constitutions, and that Mohs failed to identify a constitutional violation with respect to the bail issue. *State v. Mohs,* 726 N.W.2d 816, 819–22 (Minn.App.2007).

## I.

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Minnesota Constitution, using nearly identical language,[2] places the same restrictions on the issu-

1. In *State v. Lothenbach,* we authorized the submission of a criminal case for a court trial based on stipulated facts, rather than the entry of a guilty plea, to preserve the defendant's right to appeal pretrial decisions regarding the suppression of evidence. 296 N.W.2d 854, 857–58 (Minn.1980).

2. The warrant clause in the Minnesota Constitution provides that "no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." Minn. Const. art. I, § 10. The minor differences between the state and federal provisions do not affect our interpretation in this case.

ance of warrants. Minn. Const. art. I, § 10. The purpose of these provisions is "to shield the citizen from unwarranted intrusions into his privacy." *Jones v. United States*, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). This purpose is served by the requirement that law enforcement officers obtain from an impartial magistrate a warrant authorizing the particular search or seizure. *Id.; Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The oath-or-affirmation clause ensures the truthfulness of the information upon which the magistrate's probable cause determination is based. *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.3(e) (4th ed.2004). Thus, we have stated that the intent of these requirements "is to ensure that a magistrate is apprised, in whatever manner, of adequate facts that establish probable cause before a warrant shall issue." *State v. Meizo*, 297 N.W.2d 126, 128 (Minn.1980).

■ Mohs argues that the federal and state constitutions prohibit the issuance of all warrants except "upon probable cause" and that both constitutions "specif[y] the exclusive conditions under which probable cause itself must be specified: 'supported by oath or affirmation.' " Because the facts supporting probable cause in this case were not sworn to under oath, Mohs argues that the bench warrant at issue was unconstitutional.

Neither this court nor the United States Supreme Court has directly addressed the constitutionality of a bench warrant where probable cause is supported only by facts within the personal knowledge of the issuing magistrate. But the authority of courts to order that individuals who fail to appear as required by law be brought before the court is supported by the inherent authority of courts, by analogous precedent of the United States Supreme Court, and by the reasoning of other courts that have addressed this issue.

The inherent authority of a court to order arrest and punishment for offenses committed in the court's presence has been recognized since before the adoption of the Fourth Amendment. Blackstone described the English common law in the years preceding the American Revolution as follows:

> If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any farther proof or examination. But in matters that arise at a distance, and of which the court cannot have so perfect a knowle[d]ge, unless by the confession of the party or the testimony of others, if the judges upon *affidavit* see sufficient ground to suspect that a contempt has been committed, they either make a rule on the suspected party to show cause why an attachment should not issue against him; or, in very flagrant instances of contempt, the attachment issues in the first instance * * *.

William Blackstone, 4 *Commentaries* *277, * 283 (footnote omitted). The recognition of this inherent judicial power has continued in this country since the adoption of the Fourth Amendment. For example, in *Ex parte Robinson,* the Supreme Court stated that "[t]he power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." 19 Wall. 505, 86 U.S. 505, 510, 22 L.Ed. 205 (1873). In another case, the Court outlined numerous precedents acknowledging this inherent authority before stating:

> [I]t is a settled doctrine in the jurisprudence both of England and of this coun-

try, never supposed to be in conflict with the liberty of the citizen, that, for direct contempts committed in the face of the court * * * the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof that its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions.

*Ex parte Terry*, 128 U.S. 289, 313, 9 S.Ct. 77, 32 L.Ed. 405 (1888).

In addition to this historical recognition of the courts' inherent authority, the Supreme Court addressed a similar issue with respect to a legislative warrant in *McGrain v. Daugherty*, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927). During the course of an investigation into misconduct by the United States Attorney General, the United States Senate select committee conducting the investigation issued and served two subpoenas on Mally S. Daugherty, the Attorney General's brother. *Id.* at 151–53, 47 S.Ct. 319. When Daugherty failed to appear or respond in any manner to the subpoenas, the committee submitted a report to the full Senate stating that the subpoenas had been issued, that they had been personally served, and that the witness refused to appear as directed. *Id.* at 152–53, 47 S.Ct. 319. Pursuant to a resolution adopted by the Senate, the President pro tempore issued a warrant directing that Daugherty be arrested and brought before the Senate for questioning. *Id.* at 153, 47 S.Ct. 319. Following his arrest, Daugherty petitioned for a writ of habeas corpus. *Id.* at 154, 47 S.Ct. 319.

Addressing Daugherty's argument that the warrant violated the oath-or-affirma-

tion clause of the Fourth Amendment, the Supreme Court stated:

In legislative practice committee reports are regarded as made under the sanction of the oath of office of its members; and where the matters reported are within the committee's knowledge and constitute probable cause for an attachment such reports are acted on and given effect without requiring that they be supported by further oath or affirmation.

*Id.* at 156, 47 S.Ct. 319. The Court also found support for this legislative practice in the settled judicial doctrine that courts may order commitments for contempts committed in the courts' presence "without other proof than their own knowledge of the occurrence, and that they may issue attachments, based on their own knowledge of the default, where intended witnesses or jurors fail to appear in obedience to process shown by the officer's return to have been duly served." *Id.* at 157, 47 S.Ct. 319 (footnote omitted). Based on this reasoning, the Court held that the Senate warrant "was sufficiently supported by oath to satisfy the constitutional requirement." *Id.* at 158, 47 S.Ct. 319.

We also note that several other courts have addressed the same question we are now presented with and have concluded that the Fourth Amendment and similar state constitutional provisions do not prohibit the issuance of bench warrants supported only by the personal knowledge of the issuing court. For example, the Oregon Supreme Court, when addressing a provision of the Oregon Constitution that is nearly identical to the oath-or-affirmation requirement of the federal and Minnesota Constitutions, held that "an exception to the warrant requirement exists when the facts giving rise to probable cause occur in the presence of the court." *State v. Noble*, 314 Or. 624, 842 P.2d 780, 782

(1992) (internal quotation marks omitted). The Oregon court, however, held that this exception is limited to "events that occur in the *physical presence* of a judicial officer acting in the judicial officer's official capacity."[3] *Id.* Similarly, in concluding that there is a "personal knowledge" exception to the general rule that the facts supporting probable cause for a warrant be sworn in an affidavit, the Nebraska Supreme Court recognized that "[t]he 'personal knowledge' exception to the affidavit requirement recognizes the commonsense notion that there is no point in a judge executing an affidavit when that judge has personal knowledge of facts establishing probable cause," and that requiring an affidavit in such circumstances "would accomplish nothing other than to elevate form over substance." *State v. Davidson,* 260 Neb. 417, 618 N.W.2d 418, 425 (2000); *see also United States v. Evans,* 574 F.2d 352, 355 (6th Cir.1978); *People v. Allibalogun,* 312 Ill.App.3d 515, 245 Ill.Dec. 186, 727 N.E.2d 633, 636 (2000); *State v. Pinela,* 113 N.M. 627, 830 P.2d 179, 181 (Ct.App. 1992); *Kosanda v. State,* 727 S.W.2d 783, 784–85 (Tex.App.1987). Further, we note that Mohs has not cited a single case in which a court reached a decision contrary to this overwhelming authority.

In the present case, Mohs was ordered to appear in the district court at 8:30 a.m. on November 1, 2004. But Mohs was not present when the court called his case at 9:00, and still had not appeared when the court went on the record at 9:49 a.m. All of this information was within the personal knowledge of the presiding judge, who was in the courtroom. The judge knew Mohs's cases were scheduled and could see firsthand that Mohs was not present. We

conclude that to require either the judge or some other person to state these facts in an affidavit, as Mohs suggests, would not further the Fourth Amendment's policy of ensuring that a detached magistrate independently determine when a warrant shall issue and would not provide any new information related to the court's probable cause determination. Rather, as the Nebraska Supreme Court recognized, the only effect of such a rule would be the elevation of form over substance. Accordingly, we hold that the district court did not violate either the federal or Minnesota Constitution when it issued a bench warrant based on its personal knowledge, obtained in its official capacity, that Mohs had notice of the scheduled court appearance but did not appear.

## II.

■ Mohs also argues that the district court lacked sufficient knowledge to support a probable cause determination that a contempt was committed because the court did not know the reason for Mohs's failure to appear. In support of this argument, Mohs cites our decision in *Knajdek v. West,* 278 Minn. 282, 153 N.W.2d 846 (1967). In *Knajdek,* an attorney was sentenced to 60 days in jail as punishment for failing to obtain the court's approval of a settlement and appearing 20 minutes late to a scheduled court proceeding. *Id.* at 283–84, 153 N.W.2d at 847. The attorney appealed this adjudication of contempt, arguing that we had previously held that a person charged with constructive criminal contempt—i.e., "a criminal contempt not committed in the presence of the court"— is entitled to a jury trial on the charge.

---

**3.** One of the illustrations of this principle provided by the Oregon Supreme Court is particularly relevant to the present case: "For example, while the court is in session, when a party fails to appear without excuse at the

time and place of a scheduled hearing, * * * the facts giving rise to probable cause occur 'in the presence of the court.' " *Noble,* 842 P.2d at 782.

*Id.* at 284, 153 N.W.2d at 847. In determining whether the contempts at issue were direct or constructive, we stated:

Admittedly, both the failure to secure the court's approval of the minor's settlement and the failure to appear on time occurred in the court's presence in the sense that the judge was personally aware of the respective failures and the possible implications. But the mere fact of the failure was in neither instance sufficient in itself to constitute the offense. It was the reasons for the failure which would render them either contemptuous or excusable, and the court could have no firsthand knowledge as to these reasons. Thus, the judge did not, as a result of acts occurring in his immediate view and presence, have personal knowledge as to all the operative facts which constituted the offense and were necessary to a proper adjudication of appellant's guilt or innocence of the contempt charges.

*Id.* at 284–85, 153 N.W.2d at 847–48 (footnote omitted).

We conclude that *Knajdek* is distinguishable. In *Knajdek,* we were addressing the imposition of punishment by the district court for criminal contempt. The present case, on the other hand, merely involves a bench warrant ordering that a defendant be brought before the court in order to advance the ongoing proceedings. In this context, we conclude that the reason for the defendant's failure to appear is not a necessary fact to the court's probable cause determination. Therefore, we hold that the bench warrant for Mohs's arrest did not violate the warrant clause of the federal or Minnesota Constitutions on the grounds that the court did not know the reason Mohs failed to appear.

III.

Article I, section 7, of the Minnesota Constitution provides that "[a]ll persons before conviction shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great." Mohs argues that this provision requires that all warrants specify a bail amount on their face, and that the issuance of a "Body Only" warrant is therefore unconstitutional.

Mohs is correct that Article I, section 7, creates a constitutional right to bail in all noncapital cases. *See State v. Pett,* 253 Minn. 429, 432–33, 92 N.W.2d 205, 207–08 (1958). But the right to bail does not necessarily mean that the bail must be set on the face of the warrant. The only temporal condition in the constitutional text specifies that persons are bailable "before conviction," not immediately upon arrest. As the court of appeals correctly noted, Article I, section 7, "neither expressly states nor implies that all arrest warrants must provide for bail." *Mohs,* 726 N.W.2d at 822.

To support his argument that bail must be set out on the face of the warrant, Mohs cites Rule 3.02 of the Minnesota Rules of Criminal Procedure. Rule 3.02 states that "[f]or all offenses, the amount of bail shall and other conditions of release may be set by the issuing officer and endorsed on the warrant." Based on this language, Mohs asserts that a warrant governed by Rule 3.02 must include a bail amount. But Rule 3 only addresses warrants or summons upon complaint. Thus, "the warrant" addressed by Rule 3.02 must be the warrant issued under Rule 3.01[4] upon initiation of

---

4. Rule 3.01 provides for the issuance of a warrant "[i]f it appears from the facts set forth in writing in the complaint and any

supporting affidavits or supplemental sworn testimony that there is probable cause to be-

the prosecution. The warrant in this case—which was issued when Mohs failed to appear for a pretrial hearing and a jury trial in violation of the conditions of his release—is therefore not governed by Rule 3.02.

Mohs also cites the comment to Rule 6 of the Minnesota Rules of Criminal Procedure,[5] which provides that "the court is not authorized to revoke the defendant's release without setting bail because such action is not permitted under Minnesota Constitution Article 1, section 5." This comment, however, is specifically directed at Rule 6.03, subdivision 3, which requires the district court to "continue the release upon the same conditions or impose different or additional conditions for the defendant's possible release," but only *"[a]fter hearing* and upon finding that the defendant has violated conditions imposed on release." (Emphasis added). The comment, when read together with the rule that it addresses, suggests only that the court may not permanently revoke the defendant's release without setting bail. The comment does not address revocation of the defendant's release pending a hearing on the alleged violation. Moreover, the language of Rule 6.03, subdivision 1b, expressly provides that when a warrant is issued for violations of release conditions,[6] including failure to appear at a scheduled court proceeding, the warrant "shall direct that the defendant be arrested and taken forthwith before such judge, judicial officer or court." Thus, Rule 6 could be interpreted to require that such warrants be

"Body Only," and that new conditions be imposed only after the defendant is brought before the court. Therefore, we conclude that Mohs's reliance on the comments to Rule 6 is misplaced.

For the foregoing reasons, we conclude that neither Article I, section 7, of the Minnesota Constitution nor the Minnesota Rules of Criminal Procedure require that a bail amount be specified on the face of a bench warrant issued based on a violation of the defendant's conditions of release. Therefore, we hold that the "Body Only" bench warrant in this case was valid.

Affirmed.

---

lieve that an offense has been committed and that the defendant committed it."

5. Rule 6 of the Minnesota Rules of Criminal Procedure governs pre-trial release.

6. Rule 6 allows the issuance of either a summons or a warrant when a defendant violates his release conditions. Minn. R.Crim. P.

6.03, subds. 1a–1b. But the court may issue a warrant instead of a summons only "if it reasonably appears that there is a substantial likelihood that the defendant will fail to respond to a summons, or that the continued release of the defendant will endanger the safety of any person or the community, or that the location of the defendant is unknown." Minn. R.Crim. P. 6.03, subd. 1b.